(No. 62187

ALMA J. LANIER, Appellant, v. ASSOCIATES FI-
NANCE, INC., *et al.*, Appellees.

*Opinion filed October 17, 1986.*

4

SIMON, J., specially concurring.

James D. Griffith, of Iversen, Carlson & Associates, of Chicago, for appellant.

George A. Platz and Eugene A. Schoon, of Sidley & Austin, of Chicago, for appellees.

JUSTICE MILLER delivered the opinion of the court:

After paying the balance of an installment loan in September 1983, eight years prior to its due date in 1991, plaintiff Alma Lanier instituted a class action against defendants, Associates Finance, Inc., and its alleged parent corporation, Associates Corporation of North America. Plaintiff's class was comprised of persons who had prepaid, or were currently parties to,

credit obligations entered into with the defendant Associates Finance, in which the credit agreements computed interest payments according to the Rule of 78's. The plaintiff contended that use of the Rule of 78's to compute interest in loans made to unsophisticated borrowers, absent explanation to the borrower about the effects of the rule upon early repayment, was fraudulent and violated unspecified provisions of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, pars. 261 through 271).

The circuit court of Cook County granted defendants' motion to dismiss plaintiff's lawsuit, pursuant to section 2—615 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—615). Finding that the loan-disclosure provisions violated neither the Federal Truth in Lending Act (15 U.S.C. secs. 1601 through 1665 (1982)) nor State law, the appellate court affirmed the dismissal (134 Ill. App. 3d 183). We allowed plaintiff's petition for leave to appeal under Rule 315(a) (103 Ill. 2d R. 315(a)) and now affirm the dismissal.

On August 24, 1981, plaintiff obtained a loan in the amount of $24,961.68 from defendant Associates Finance, Inc., at a stated annual percentage rate of 21.59%. In addition, plaintiff was required to pay a service fee of $748.85. The loan was secured by a first mortgage on plaintiff's home and was to be repaid in monthly installments over a 10-year period. The loan agreement provided for prepayment of the outstanding balance of the loan, with a refund of the unearned finance charge computed according to the Rule of 78's, in the following language:

> "This Loan Agreement may at the option of the Borrower(s) be paid in whole or in part prior to the last payment date. If Borrower(s) prepays the loan in full, the Lender will allow a refund credit of the interest charge for the months prepaid using the 'Rule of 78's' method.

No portion of the service fee will be refunded. No refund less than $1.00 will be made.''

After making 23 monthly installment payments totaling $11,854.57, plaintiff inquired of Associates Finance as to the amount required to pay off her loan at that time. Associates informed plaintiff that the payoff figure was $27,706. Plaintiff paid that amount and initiated the present lawsuit.

Plaintiff states that, because defendants used the Rule of 78's to compute the interest on her loan, the amount required for plaintiff to pay off the balance of her loan was $4,654.42 more than it would have been had the defendant Associates Finance computed the interest on the loan according to the actuarial method. Plaintiff claims that, because of the Rule of 78's, plaintiff was charged an effective annual interest rate of 31.31% for the 23-month period ending when she paid off her loan, rather than the 21.59% APR stated in the agreement. Plaintiff argues that, since the effect of the rule on interest refunds following early repayment is understood by few borrowers, the defendants had an obligation to explain the Rule of 78's at the time of the loan.

Under the Rule of 78's, which is also known as the sum-of-the-digits method, a higher percentage of the total finance charge for a loan is attributable to the first months of the loan than is attributable to the last months. In a 12-month loan, for example, the borrower will pay $12/78$ of the total finance charge during the first month of the loan, and will pay $11/78$ of the total charge during the second month. In each succeeding month of a 12-month loan, the amount of the total finance charge paid is reduced by $1/78$ of the total charge, until only $1/78$ of the total finance charge remains to be paid during the final month. Since the creditor earns most of the finance charge during the early months of the loan term, the amount of unearned finance charge which the debtor will

be entitled to in the event of prepayment rapidly declines. Thus, if the debtor prepays after the first month of a 12-month loan using the Rule of 78's, the creditor will have earned $12/78$ of the finance charge, and the debtor would be entitled to $66/78$ of the total finance charge as a credit against the total amount owed. After two months, prepayment will save the debtor from $55/78$ of the total finance charge. After six months, or halfway through the stated term of the loan, prepayment will save the debtor only $21/78$ of the total finance charge. See generally Hunt, *The Rule of 78: Hidden Penalty for Prepayment in Consumer Credit Transactions*, 55 B.U.L. Rev. 331 (1975) (hereafter Hunt); Comment, *Consumer Protection: Truth-in-Lending Disclosure of the Rule of 78ths*, 59 Iowa L. Rev. 164 (1973).

Use of the actuarial method, as opposed to the Rule of 78's, to compute interest on loans measures true interest yield; the amount of interest attributed to each month or payment period bears a direct relationship to the amount of money held by the borrower and the time for which that amount is held. *Drennan v. Security Pacific National Bank* (1981), 28 Cal. 3d 764, 769, 621 P.2d 1318, 1320, 170 Cal. Rptr. 904, 906, *cert. denied* (1981), 454 U.S. 833, 70 L. Ed. 2d 112, 102 S. Ct. 132.

Unlike the actuarial method of computing finance charges, the Rule of 78's does not provide an accurate approximation of unearned finance charges. (See *Ballew v. Associates Financial Services Co. of Nebraska, Inc.* (N.D. Neb. 1976), 450 F. Supp. 253.) Rather, the Rule of 78's allocates too much of the finance charge to the creditor during the early months of the credit transaction. (Hunt, 55 B.U.L. Rev. 331, 338 (1975).) As a result, refunds of unearned finance charges on prepayment of a credit obligation by a debtor are always lower when using the Rule of 78's than when using the actuarial method. (See *Drennan v. Security Pacific National*

*Bank* (1981), 28 Cal. 3d 764, 621 P.2d 1318, 170 Cal. Rptr. 904.) The Supreme Court of California, although upholding the use of the rule in consumer credit transactions, described the rule as a hidden charge on the consumer, unjustified by the economic needs of the lender. 28 Cal. 3d 764, 621 P.2d 1318, 170 Cal. Rptr. 904.

The parties agree that the loan-agreement form provided by defendant Associates Finance and signed by plaintiff did not explain how the Rule of 78's operates; the agreement also did not inform borrowers that the Rule of 78's would yield a lower finance-charge rebate upon prepayment than would the actuarial method of computing these rebates.

In count I of the complaint, the plaintiff alleges that, although the annual percentage-rate figure stated in her loan agreement is clear, the "Rule of 78's" method of computing interest is "complicated and obtuse." Plaintiff contends that there was no meeting of the minds when she signed her loan contract. Plaintiff requests that she and others who have prepaid loans obtained from the defendants be allowed to recover the difference between the amount which they tendered to pay off their loans under the Rule of 78's, and the lesser amount which would have been required for prepayment had the interest been computed according to the actuarial method. The plaintiff also seeks to reform the loan agreements of those persons currently obligated to the defendants, to provide for use of the actuarial method, rather than the Rule of 78's presently required by the loan contracts, in computing interest rates upon prepayment.

The plaintiff does not allege in count I that the term "Rule of 78's" is ambiguous, nor does she allege that the term was mistakenly included in the written agreement. Rather, because the plaintiff apparently did not understand the operation of the Rule of 78's at the time she entered into the contract, she now seeks to substitute in

the loan contract a provision more advantageous to her and to the members of her class. The court cannot, however, make a new contract for the parties. (See *Slezak v. Fleming* (1946), 392 Ill. 387, 390; *Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, 554; see also *Freeland v. Edwards* (1957), 11 Ill. 2d 395, 401 (court cannot, by construction, establish a contract different from that expressed in the written agreement).) To permit a contracting party to escape contractual obligations by claiming not to have understood the meaning of the terms clearly expressed in the agreement would entirely remove the certainty inherent in written agreements. The plaintiff has alleged no ground in count I upon which to obtain the relief she seeks.

In count II, the plaintiff alleges that the defendants fraudulently misrepresented the interest rate in the loan agreement. Plaintiff claims that although the loan contract recited an annual percentage rate of interest of 21.59%, the actual interest rate charged was much higher because the plaintiff prepaid her loan and the defendant computed the resulting interest rebate under the Rule of 78's. Plaintiff notes that, because the Rule of 78's attributes a higher proportion of the total interest charge to the early months of the loan term than to the final months of the term, use of the Rule of 78's to determine the interest rebate upon prepayment results in an actual interest rate for the period in which the loan was outstanding higher than the rate stated in the loan agreement. Plaintiff contends that the defendants knew that it was likely, from a statistical standpoint, that the loan would be repaid before its scheduled due date and that the result would be a higher effective interest rate than that listed in the loan agreement.

The Federal Truth in Lending Act (15 U.S.C. secs. 1601 through 1665 (1982)) requires issuers of consumer credit to make certain disclosures in credit agreements

(12 C.F.R. sec. 226.18 (1985)). The 21.59% figure listed on the plaintiff's loan agreement was the annual percentage rate (APR) of interest, required to be disclosed by the Truth in Lending Act (12 C.F.R. sec. 226.18(e) (1985)). The APR states the yearly cost of credit to the consumer and is computed using the entire term of the loan agreed upon by the parties. See 12 C.F.R. sec. 226, App. J (1985).

In the present case, the plaintiff and the defendant Associates Finance agreed upon a loan term of 10 years. The plaintiff, however, paid her obligation in full after approximately 23 months. That the effective interest rate for the 23-month period is different than the APR stated in the loan agreement does not mean that the APR stated in the agreement was misrepresented. The APR is calculated according to the full agreed-upon period of the loan, and is not meant to reflect the various interest rates which might result if a borrower pays his credit obligation in full prior to its due date. Under the Truth in Lending Act, all creditors covered by the Act must compute and disclose the APR and the loan finance charge in the same way. (See R. Clontz, 1 *Truth in Lending Manual* sec. 5.02(11)(d) (Cum. Supp. 1986).) There is no requirement under the Truth in Lending Act that the APR figure equal the interest percentage at each interim period in the loan if the borrower chooses to pay his credit obligation prior to its due date. In the case of the plaintiff's loan, the effective interim rates of interest would vary daily. Listing the changing interim rates on the loan agreement would be both difficult and confusing.

The plaintiff in the present case cannot successfully claim that the defendant committed common law misrepresentation by properly stating the APR on the loan agreement. Under the plaintiff's argument, a creditor would find himself in the anomalous position, whenever

the APR and the rate for any period less than the full loan term differed, of being guilty of common law misrepresentation by specifically complying with the mandates of the Federal Truth in Lending Act. We find, contrary to the plaintiff's assertion, that by listing an APR of 21.59% as defined by the Truth in Lending Act, the defendant did not misrepresent the interest rate per annum in the event of prepayment by the plaintiff.

In addition to her claims under common law, plaintiff also alleges that the failure of defendant Associates Finance to explain the operation of the Rule of 78's violates the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, pars. 261 through 271) (Consumer Fraud Act). The plaintiff has not specified in her complaint, however, which provisions of the Consumer Fraud Act were violated. In response to the plaintiff's claim, the defendant maintains that it complied with the disclosure requirements of the Federal Truth in Lending Act, and that compliance with the Federal act is a defense to liability under the Illinois statute. We must consider, therefore, whether the loan-agreement form signed by the plaintiff comports with the Federal requirements for disclosure in consumer credit, and then consider whether compliance with the Federal Truth in Lending Act precludes liability under the Illinois statute.

The Truth in Lending Act was enacted by Congress to assure meaningful disclosure of credit terms, so that consumers can readily compare various credit options available to them. (15 U.S.C. sec. 1601 (1981).) Congress granted the Federal Reserve Board the authority to prescribe regulations to carry out the purposes of the Truth in Lending Act. (15 U.S.C. sec. 1604 (1981).) Pursuant to that authority, the Board enacted a comprehensive set of rules, known as Regulation Z (12 C.F.R. sec. 226 (1981)), implementing the principles of the Truth in Lending Act.

Regulation Z has been substantially revised since plaintiff obtained her loan in August 1981. The revisions to Regulation Z did not become mandatorily effective until October 1, 1982, however, subsequent to the formation of plaintiff's loan agreement. Although conceivably relevant to the issue of certification of the plaintiff's asserted class (see Ill. Rev. Stat. 1983, ch. 110, par. 2—801(2)), a question not reached by the trial court and not at issue here, the revisions do not apply to the plaintiff's loan agreement. See 4 S. Williston, Contracts sec. 615 (3d ed. 1961).

At the time plaintiff signed her loan agreement, section 226.8(b)(7) of Regulation Z (12 C.F.R. sec. 226.8(b)(7) (1981)) was in effect. Section 226.8(b)(7) required, in consumer credit transactions, "[i]dentification of the method of computing any unearned portion of the finance charge in the event of prepayment in full which includes precomputed interest charges." Plaintiff argues that mere reference to the Rule of 78's by name is insufficient under section 226.8(b)(7) of Regulation Z because few borrowers understand the operation of the Rule of 78's. Plaintiff suggests that merely naming the rule is inconsistent with the meaningful-disclosure requirements of section 1601 of the Truth in Lending Act (15 U.S.C. sec. 1601 (1981)).

In 1973, the Federal Reserve Board staff issued section 226.818 (12 C.F.R. sec. 226.818), which is an official interpretation of sections 226.8(b)(6) and (7) of Regulation Z. In section 226.818(c), the Board balanced the idea of requiring lenders to explain the rule with the alternative of permitting lenders to mention the rule by name, without describing its operation, in order to avoid confusion and informational overload. The Board concluded in section 226.818(c) that simple reference by name to the Rule of 78's satisfies the identification requirement of section 226.8(b)(7). The Board found that the Rule of

78's involved complex mathematical formulations which cannot be accurately condensed into simple statements. The Board determined that if these formulas were repeated at length on loan-disclosure forms, they could detract from other important disclosures required by Regulation Z.

Although not binding upon the courts, the Federal Reserve Board's formal interpretations are entitled to a great degree of deference. This deference is especially appropriate in interpreting the Truth in Lending Act and the Board's own Regulation Z. (See *Bone v. Hibernia Bank* (9th Cir. 1974), 493 F.2d 135.) The Supreme Court has stated that "[u]nless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation [Z] should be dispositive." (*Ford Motor Credit Co. v. Milhollin* (1980), 444 U.S. 555, 565, 63 L. Ed. 2d 22, 31, 100 S. Ct. 790, 797.) See also *Anderson Bros. Ford v. Valencia* (1981), 452 U.S. 205, 219, 68 L. Ed. 2d 783, 794, 101 S. Ct. 2266, 2274 (Board's interpretation of its own regulation should be accepted by the courts absent some obvious repugnance to the Truth in Lending Act).

The Board is the agency empowered by Congress to prescribe implementing and interpretive regulations for the Truth in Lending Act. (15 U.S.C. sec. 1604(a) (1982); *Ford Motor Credit Co. v. Milhollin* (1980), 444 U.S. 555, 566, 63 L. Ed. 2d 22, 32, 100 S. Ct. 790, 797.) The Board, therefore, is entitled to the greatest respect in the interpretation of its own regulations. In *Milhollin*, the Supreme Court noted that it is unimportant that formal interpretations are issued by Federal Reserve staff rather than the Board, for deference to administrative views is founded upon respect for the expertise of the agency. (444 U.S. 555, 566 n.9, 63 L. Ed. 2d 22, 32 n.9, 100 S. Ct. 790, 797 n.9.) Moreover, Congress included compliance with official staff interpretations when it ab-

solved creditors from liability under the Truth in Lending Act for "any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations." (15 U.S.C. sec. 1640(f) (1980).) Section 1640 evinces a clear congressional determination to treat the Board's administrative interpretations under the Truth in Lending Act as authoritative. This adherence to the Board's interpretations was motivated, at least in part, by a desire to avoid inconsistent interpretations of the Truth in Lending Act by the courts. 444 U.S. 555, 567-68, 63 L. Ed. 2d 22, 32-33, 100 S. Ct. 790, 797-98.

It is the duty of the Board in interpreting the meaningful-disclosure provisions of the Truth in Lending Act to strike a balance between competing considerations of complete disclosure and the need to avoid informational overload. (*Ford Motor Credit Co. v. Milhollin* (1980), 444 U.S. 555, 567-69, 63 L. Ed. 2d 22, 32-33, 100 S. Ct. 790, 797-98.) As stated, the Federal Reserve staff has concluded, in official staff interpretation section 226.818(c), that mere reference to the Rule of 78's by name is sufficient disclosure under Regulation Z. Because the conclusion reached in section 226.818(c) is not demonstrably irrational, and because the defendant acted in conformity with this interpretation, we hold that the defendant did not violate section 226.8(b)(7) of Regulation Z by failing to explain the operation of the Rule of 78's. Accord, *Gantt v. Commonwealth Loan Co.* (8th Cir. 1978), 573 F.2d 520; *Bone v. Hibernia Bank* (9th Cir. 1974), 493 F.2d 135; *Kramer v. Marine Midland Bank* (S.D.N.Y. 1983), 559 F. Supp. 273, 280; *Nesbitt v. Blazer Financial Services, Inc.* (N.D. Ill. 1982), 550 F. Supp. 819, 825 n.4; *Drennan v. Security Pacific National*

*Bank* (1981), 28 Cal. 3d 764, 621 P.2d 1318, 170 Cal. Rptr. 904; *Beneficial Discount Co. v. Johnson* (1975), 215 Va. 582, 211 S.E.2d 571.

Plaintiff suggests that *Johnson v. Associates Finance, Inc.* (S.D. Ill. 1974), 369 F. Supp. 1121, mandates a contrary result. In *Johnson,* the court concluded that the lender's failure to explain the operation of the Rule of 78's in rebating precomputed interest violated section 226.8(b)(7). The decision in *Johnson,* however, fails to mention the Federal Reserve Board's official interpretation in section 226.818(c), which had been issued only a short time before the court announced its decision. In *Nesbitt v. Blazer Financial Services, Inc.* (N.D. Ill. 1982), 550 F. Supp. 819, 825 n.4), decided eight years after *Johnson,* the United States District Court for the Northern District of Illinois relied upon section 226.818(c) in finding that reference by name to the Rule of 78's satisfies the identification requirements of section 226.8(b)(7). In view of the weight of authority contrary to *Johnson,* and because of the deference due the Board's interpretation of Regulation Z in section 226.818 and our finding that the Board's interpretation is not demonstrably irrational, we decline to follow the conclusion reached in *Johnson.*

Plaintiff next contends that, because the Rule of 78's in credit transactions produces a smaller credit of unearned finance charges upon prepayment than does the actuarial method, the rule penalizes early repayment of credit obligations by consumers. This reduced interest rebate, plaintiff argues, is a penalty charge which must be disclosed under Regulation Z, section 226.8(b)(6) (12 C.F.R. sec. 226.8(b)(6) (1981)). Subsection (b)(6) required a "description of any penalty charge that may be imposed by the creditor or his assignee for prepayment of the principal obligation *** with an explanation of the method of computation of such penalty." 12 C.F.R. sec.

226.8(b)(6) (1981).

In paragraph (b) of official staff interpretation section 226.818, the Federal Reserve Board concluded that the lesser rebate resulting from the use of the Rule of 78's is not a prepayment penalty. The Board stated:

"[A]lthough in a precomputed obligation the finance charge rebate to a customer may be less when calculated according to the 'Rule of 78's' or 'sum of the digits' or other method than if calculated by the actuarial method, such difference does not constitute a penalty charge for prepayment that must be described pursuant to section 226.8(b)(6)." (12 C.F.R. sec. 226.818(b) (1981).)

As with the interpretation of section 226.8(b)(7), we find here that the conclusion reached by the agency Congress has empowered to adopt and interpret regulations consistent with the Truth in Lending Act is not irrational; for the reasons suggested by the Supreme Court in *Ford Motor Credit Co. v. Milhollin* (1980), 444 U.S. 555, 63 L. Ed. 2d 22, 100 S. Ct. 790, we adopt the Federal Reserve Board's position regarding section 226.8(b)(6). (See *Mourning v. Family Publications Service, Inc.* (1973), 411 U.S. 356, 36 L. Ed. 2d 318, 93 S. Ct. 1652.) We hold, therefore, that the lesser rebate of unearned interest resulting from the Rule of 78's is not a penalty and need not be disclosed or explained under section 226.8(b)(6). See *Gantt v. Commonwealth Loan Co.* (8th Cir. 1978), 573 F.2d 520; *Bone v. Hibernia Bank* (9th Cir. 1974), 493 F.2d 135.

We next consider whether compliance with the Federal statute is a defense to liability under Illinois' Consumer Fraud Act. Similar Illinois consumer credit statutes, inapplicable to plaintiff's loan and not cited in her complaint, provide that creditors and credit agreements that comply with the Truth in Lending Act, its amendments, and regulations issued thereunder, are in compliance with the State acts. (Consumer Installment Loan

Act (Ill. Rev. Stat. 1981, ch. 17, par. 5420); "An Act in relation to the rate of interest" (Ill. Rev. Stat. 1981, ch. 17, par. 6410); Retail Installment Sales Act (Ill. Rev. Stat. 1981, ch. 121½, par. 505); Motor Vehicle Retail Installment Sales Act (Ill. Rev. Stat. 1981, ch. 121½, par. 565).) These statutes specifically provide that creditors must make certain disclosures in credit agreements. The Consumer Fraud Act, under which plaintiff complains, does not mandate any particular form or subject of disclosure, but rather is a general prohibition of fraud and misrepresentation. Because the Illinois consumer credit statutes requiring specific disclosures are met by compliance with the Truth in Lending Act, we believe that the Consumer Fraud Act's general prohibition of fraud and misrepresentation in consumer transactions did not require more extensive disclosure in the plaintiff's loan agreement than the disclosure required by the comprehensive provisions of the Truth in Lending Act. Rather, we perceive in the disclosure provisions of Illinois' consumer credit statutes a consistent policy against extending disclosure requirements under Illinois law beyond those mandated by the Truth in Lending Act, in situations where both the Act and the Illinois statutes apply.

Section 10b(1) of the Consumer Fraud Act provides that the Consumer Fraud Act does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." (Ill. Rev. Stat. 1981, ch. 121½, par. 270b(1).) Under this provision, conduct which is authorized by Federal statutes and regulations, such as those administered by the Federal Reserve Board, is exempt from liability under the Consumer Fraud Act. (See *Mario's Butcher Shop & Food Center, Inc. v. Armour & Co.* (N.D. Ill. 1983), 574 F. Supp. 653.) The disclosure in the loan transaction between the plaintiff and the defendant

complies with Federal Regulation Z, and thereby comports with the Truth in Lending Act. Because the Act is a law administered by the Federal Reserve Board, we find that, under section 10b(1) of the Consumer Fraud Act, the defendant's compliance with the disclosure requirements of the Truth in Lending Act is a defense to liability under the Illinois Consumer Fraud Act in the present case.

Although not raised in her complaint, plaintiff maintains here that, due to the harsh effects of the Rule of 78's on persons such as herself who prepay their credit obligations, the Rule of 78's is subject to judicial control as violative of the public policy of Illinois. Plaintiff cites a report of the Senate Committee on Banking, Housing, and Urban Affairs which called the use of the Rule of 78's on long-term credit transactions "indefensible," and encouraged State legislatures to prohibit use of the rule in long-term consumer credit obligations. (Sen. Rep. No. 923, 96th Cong., 2d Sess. 11 (1980).) However, the decision to prohibit the use of the Rule of 78's in consumer credit transactions is not a matter for the courts, but rather involves policy decisions more properly addressed by the legislature. (See *Drennan v. Security Pacific National Bank* (1981), 28 Cal. 3d 764, 779, 621 P.2d 1318, 1327, 170 Cal. Rptr. 904, 913.) We decline, therefore, to restrict or prohibit use of the Rule of 78's on public policy grounds, but we urge the legislature to promptly consider this matter which reflects an apparent injustice under the law as it currently exists.

Finding neither misrepresentation nor a violation of the Consumer Fraud and Deceptive Business Practices Act, we affirm the judgment of the appellate court.

*Judgment affirmed.*

JUSTICE SIMON, specially concurring:
Bare reference to the Rule of 78's by name in a loan

contract fails to disclose a key aspect of the agreement to the borrower and thus imposes a hidden charge. I also submit that, in view of the volatility of interest rates, borrowers need to be alerted to the full impact of their prepayment decisions. I feel compelled, however, to concur in the conclusion reached by the majority only because I doubt the availability of any legal remedy to the plaintiff in this case.

The plaintiff maintains that the failure to explain the method of computing the unearned finance charge violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act). The majority concludes that section 10(b) of the Consumer Fraud Act, which provides that "transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of *** the United States" (Ill. Rev. Stat. 1985, ch. 121½, par. 270(b)(1)) are not subject to the Act, exempts from our scrutiny the failure to make greater disclosure to the plaintiff.

Whether or not this is correct, I feel it is impossible for other reasons to conclude on the record and briefs before us that the plaintiff has a cause of action under the Consumer Fraud Act. The plaintiff's complaint does not specify which section of the Consumer Fraud Act was violated by the failure to make greater disclosure of how the rule operates. The sweeping language of section 2 of the Act (Ill. Rev. Stat. 1985, ch. 121½, par. 262), which prohibits material omissions in the conduct of commerce, appears broad enough to encompass the failure to make adequate explanation of loan terms. To give section 2 such a meaning, however, would seem to render superfluous other sections of the Act which incorporate statutes regulating disclosures in loan contracts. For instance, "An Act in relation to the rate of interest ***" (Ill. Rev. Stat. 1985, ch. 17, par. 6401 et seq.) (Interest Act) contains express provisions concerning disclo-

sures. Section 2E of the Consumer Fraud Act (Ill. Rev. Stat. 1985, ch. 121½, par. 262E) makes it unlawful under the Act to commit (as determined in a judicial proceeding) three or more violations of the Interest Act or other acts regulating credit in a single calendar year. Section 2F of the Consumer Fraud Act similarly provides a remedy under that act against a lender who has been proved in a judicial proceeding to have violated a loan statute if that violation was wilful and material. If section 2 of the Consumer Fraud Act reaches a single violation of the disclosures required by the Interest Act, I cannot see what meaning is left to the limitations in sections 2E and 2F of Consumer Fraud Act requiring judicially established multiple or wilful violations; the plaintiff has failed to explain this apparent inconsistency.

None of this is to say, as the majority seemingly does, that all borrowers aggrieved by inadequate disclosure of the Rule of 78's are necessarily without legal recourse. Statutes like the Interest Act and the Consumer Installment Loan Act (Ill. Rev. Stat. 1985, ch. 17, par. 5401) mandate disclosure of the use of the Rule of 78's. The Interest Act, for example, states that under certain circumstances the contract must provide "an identification of the method of computing any unearned portion of the finance charge in the event of prepayment of the loan." (Ill. Rev. Stat. 1985, ch. 17, par. 6410(f)(13); see also Ill. Rev. Stat. 1985, ch. 17, par. 5420(m).) The obstacle which defeats the plaintiff in this case is that she stands only on the Consumer Fraud Act. She does not allege violations of the disclosure requirements of the Interest Act or other Illinois loan statutes and consequently has not demonstrated their applicability.

The State disclosure provisions requiring "identification of the method" effectively track Federal Regulation Z. The State statutes also make clear that a lender who complies with the Federal Truth in Lending Act and reg-

ulations issued under that act complies with State law. (Ill. Rev. Stat. 1985, ch. 17, par. 6410(i); Ill. Rev. Stat. 1985, ch. 17, par. 5420.) From these facts, the majority divines a "consistent policy" against commanding greater disclosure under Illinois law than is required under the Truth in Lending Act. (114 Ill. 2d at 17.) The difficulty I have with this conclusion is that the Federal Reserve Board's staff interpretation, no matter how persuasive, is not itself a part of Truth in Lending Act or Regulation Z (114 Ill. 2d at 17-18; *Bright v. Ball Memorial Hospital Association* (7th Cir. 1980), 616 F.2d 328; *Continental Oil Co. v. Burns* (D. Del. 1970), 317 F. Supp. 194). Compliance with the interpretation, as opposed to the Truth in Lending Act or Regulation Z, does not therefore assure compliance with Illinois disclosure provisions. The Illinois courts are free to interpret our State disclosure laws more expansively than the Federal interpretation.

Of course, in construing State laws we would naturally consider the Board's interpretation of an analogous Federal regulation. Although its reading is instructive, I believe the Board, like other human agencies, may be mistaken on occasion. Administrative decisions may also be influenced by the "natural affinity *** which in time develops between the regulator and the regulated." (*Sierra Club v. Morton* (1972), 405 U.S. 727, 745-46, 31 L. Ed. 2d 636, 649, 92 S. Ct. 1361, 1371 (Douglas, J., dissenting).) As judges we have the advantage of being further removed from the everyday intricacies of regulating the credit industry, and may therefore bring a fresher perspective to the problem. I would decline to follow the Board in interpreting our similarly worded State loan-disclosure laws.

In arriving at its interpretation of Regulation Z, the Board apparently failed to consider any options for disclosing the Rule of 78's other than the polar extremes of

either merely naming the rule or providing a precise mathematical explanation of its operation. The vice-chairman of the Board explained that "the alternative [to naming the rule] would seem to require a lengthy and complicated mathematical statement which would have the added disadvantage of further complicating the disclosure statement and detracting from other disclosures." (*Bone v. Hibernia Bank* (9th Cir. 1974), 493 F.2d 135, 140; see also 12 C.F.R. sec. 226.818(c).) This analysis is both superficial and unimaginative. A mathematical statement of the operation of the rule would mean as little to judges and lawyers as to other borrowers; on the other hand, identifying the rule merely by name conveys nothing to most borrowers, and in fact would not even put them on notice to inquire because it appears entirely innocuous. A more sensible approach would be a statement informing the borrower that because the refund on prepayment would be figured according to the Rule of 78's, the time when prepayment was made could affect the ultimate cost of the credit. (See *Drennan v. Security Pacific National Bank* (1981), 28 Cal. 3d 764, 780, 621 P.2d 1318, 1327, 170 Cal. Rptr. 904, 914.) Advising the borrower that the method of computation will affect his pocketbook does not overload him with incomprehensible information, but simply raises a red flag to alert him to inquire if he is concerned about the cost of prepayment.

While this plaintiff's allegations do not appear to entitle her to a remedy, I concur specially to underline the fact that the decision in this case may not be the last word in this State on the proper disclosure of the effect of the Rule of 78's.