**Eutiquio HERNANDEZ, etc., Plaintiff,**

**v.**

**VIDMAR BUICK CO., Defendant.**

**No. 95 C 4770.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 9, 1996.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, and Daniel P. Lindsey, Edelman & Combs, Chicago, IL, for Plaintiff.

Gary Edward Wilcox, Richard M. Karr, Jonathan Paul Geen, John C. Eggert, Hardt & Stern, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Eutiquio Hernandez ("Hernandez") has charged Vidmar Buick Co. ("Vidmar") with having violated (1) the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1693r, as implemented by Federal Reserve Board ("Board") Regulation Z ("Reg. Z"), 12 C.F.R. Part 226 [1] (Count I), and (2) the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1 to 505/12 [2] (Counts II and V), by making misrepresentations in the retail installment contract used to finance Hernandez' purchase of a used car from Vidmar. Vidmar has moved for dismissal of the Complaint under Fed. R.Civ.P. ("Rule") 12(b)(6), and its motion is fully briefed and ready for decision.

---

1. Further references to Reg. Z will take the form "Section—," referring to its section numbering within 12 C.F.R.

2. Further citations to the Consumer Fraud Act will also take the form "Section—," this time referring to the section number that follows the "/" sign. There can be no confusion in that dual usage of the term "Section" in conjunction with Reg. Z, given the total difference in section numbering between the statute and the regulation.

Before this opinion turns to that task, however, a few words are in order as to the aspects of this lawsuit that are not dealt with here. For one thing, the parties have settled Hernandez' other claims that Vidmar sold him a lemon, so that Complaint Counts III and IV have just been dismissed by stipulation. And for another, Hernandez' motion for class certification under Rule 23(c)(1) will not be addressed here on the merits:

1. On November 30, 1995 this Court decided that this action would not be maintained as a class action, stating its reasons for that determination in an oral ruling.

2. After more than an intervening month had elapsed—and when this opinion had already reached substantially final form—Hernandez' counsel has now tendered an extensive motion for reconsideration of the class certification issue.

3. In the meantime our Court of Appeals has for the first time expressed its approval of the sensible approach of a district court's sometimes choosing to address a substantive motion (even one brought under Rule 56) before making a Rule 23(c)(1) decision—essentially a recognition by the Court of Appeals that the latter Rule's directive to decide on certification "[a]s soon as practicable after the commencement of an action brought as a class action" is not to be viewed as an inexorable mandate regarding the priority of decision (*Cowen v. Bank United of Texas*, 70 F.3d 937, 941–42 (7th Cir.1995)).[3]

4. Accordingly Hernandez' motion for reconsideration is granted, and the November 30 order denying class certification is hereby made conditional (see Rule 23(c)(1)). When the open issues hereafter referred to in the substantive part of this opinion become ripe for resolution, this Court will be in a better position to decide whether the other substantive matters that have been posed by Hernandez' motion for reconsideration will need to be addressed at all.

And now to the principal task at hand. For the reasons stated in this memorandum opinion and order:

1. Vidmar's Rule 12(b)(6) motion is denied except to the extent stated in the next numbered paragraph.

2. To the extent that Hernandez' TILA and Consumer Fraud Act claims are based on his theory that Vidmar misrepresented the service contract fee as non-negotiable by its placement of the reference to that fee in the retail installment contract, that aspect of Hernandez' claims is dismissed with prejudice.

3. Discovery and all other proceedings in this case are stayed until Board has taken official action on its proposed commentary to Reg. Z discussed in this opinion.

### *Hernandez' Allegations* [4]

In February 1995 Hernandez bought a used car and an accompanying service contract from Vidmar. In connection with the financing of the transaction, the parties entered into a retail installment contract ("Contract"), which listed the "Itemization of the Amount Financed" in the manner shown in the right-hand column of the Appendix to this opinion.

Two things about that "Itemization" should be noted at the outset. First, its format is dictated by the requirements of Reg. Z (with which Vidmar, like every other credit seller of consumer goods, must comply) and specifically comports with Board's model form H–3 as prescribed in Reg. Z and its Appendix H. Second, as to the focal point of the controversy between the parties—the $498 that is listed as paid to "Advantage"—it is plain from the service contract attached to Hernandez' Complaint that "Advantage" is sim-

---

3. Although *Cowen* had been decided a week before the November 30 oral ruling in this case, this Court had not received and reviewed the *Cowen* slip opinion before the date of that ruling.

4. Familiar Rule 12(b)(6) principles require this Court to accept as true the Complaint's well-pleaded factual allegations, together with all reasonable inferences in Hernandez' favor (*Bowman*

*v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir.1992)). Dismissal is appropriate only if it appears beyond doubt that Hernandez can prove no set of facts consistent with the Complaint's allegations that would entitle him to relief (*Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984)).

ply the name of the service contract plan that is administered by a company named Western Diversified Services, Inc. ("Western").[5]

In any event, this entire lawsuit grows out of the manner in which the $498 service contract fee has been disclosed in the Contract. Although the Contract reflects that sum (on the line reading "$498.00 to Advantage") as an amount "paid to others" ("others" being anyone other than Vidmar), in fact Vidmar paid only a small portion of that fee over to third party Western and retained the rest.

Hernandez' quarrel is not with Vidmar's having kept some of the service contract fee as such, but rather with the manner in which the fee was disclosed in the Contract. First, he charges Vidmar with misrepresentation because its having pocketed a portion of the $498 meant that not all of it was an amount actually "paid to others," as the Contract says. Second, he takes issue with the location of the reference to the service contract fee in the Contract: Because it is placed in a space amid such "non-negotiable" charges as "license, title & taxes" and insurance premiums, Hernandez urges that the service contract fee is made to appear non-negotiable, thus allowing Vidmar to overcharge for the service contract.

### Count I—TILA

TILA "has the broad purpose of promoting 'informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers" (*Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 559, 100 S.Ct. 790, 793–94, 63 L.Ed.2d 22 (1980), quoting 15 U.S.C. § 1601). To implement that purpose Congress "delegated expansive authority to the Federal Reserve Board to elaborate and expand the legal framework governing commerce in credit" (*id.* at 559–60, 100 S.Ct. at 793–94, citing 15 U.S.C. § 1604). Pursuant to that authority Board issued the set of regulations (Part 226) commonly known as Reg. Z.

Hernandez' TILA claim is based on the disclosure requirements contained in Sections 226.17 and 226.18. Section 226.17(a) sets out the general rule that creditors must "make the disclosures required by this subpart clearly and conspicuously in writing...." Section 226.18, which governs the content of such disclosures, states in pertinent part (footnote omitted):

> For each transaction, the creditor shall disclose the following information as applicable:
>
> *   *   *   *   *   *
>
> (c) *Itemization of amount financed.* (1) A separate written itemization of the amount financed, including:
>
> *   *   *   *   *   *
>
> (iii) Any amounts paid to other persons by the creditor on the consumer's behalf. The creditor shall identify those persons.

In ruling on the degree to which a creditor's actual disclosures must match the requirements of TILA and Reg. Z, *Smith v. No. 2 Galesburg Crown Fin. Corp.,* 615 F.2d 407, 416–17 (7th Cir.1980)[6] has held that "strict adherence" is the rule and that even the most technical disclosure violation is actionable; accord, *Cowen,* 70 F.3d at 940–41 ("hypertechnicality reigns"). Thus Hernandez' claim based on the Contract's listing of the $498 service contract fee as an amount "paid to others," when that was not literally true, is a claim of the same type that at least until recently has been found sufficient by several of this Court's colleagues to withstand a motion to dismiss (see, e.g., *Shields v. Lefta,* 888 F.Supp. 894, 897 (N.D.Ill.1995); *Cirone–Shadow v. Union Nissan, Inc.,* No. 94 C 6723, 1995 WL 51547, at *2 (N.D.Ill. Feb. 2)).

And that sufficiency has been upheld over defendants' objections (like Vidmar's here) that TILA's purposes will not be furthered by allowing such claims to go forward. It is

---

**5.** Thus the Complaint is technically inaccurate in referring to Advantage as the third party to the service contract. But that inaccuracy is not fatal as Vidmar Mem. 3–4 contends, because it does not at all affect the substance of Hernandez' grievance against Vidmar.

**6.** Another aspect of *Smith* has been overruled on unrelated grounds in *Pridegon v. Gates Credit Union,* 683 F.2d 182, 194 (7th Cir.1982) in reliance on the *Ford Motor Credit* decision.

well within Board's province to require the disclosures that are set forth in Section 226.18, and once those disclosures are required they must be made accurately—as *Smith,* 615 F.2d at 416 has put it:

> Any misgivings which creditors may have about the technical nature of the requirements should be addressed to Congress or to the Federal Reserve Board, not to the courts.

■ Before this opinion turns to the reason that the discussion in the preceding two paragraphs has not been framed in the present tense, it pauses to dispatch Hernandez' claim that Vidmar was guilty of misrepresentation by the mere placement of the service contract fee among non-negotiable items such as "license, title and taxes" and insurance premiums (see the Appendix). That contention is untenable, for the complained-of placement is clearly permissible—it is the very placement prescribed by Board's model form H–3 (Part 226, App. H–3, implementing in part the authority conferred by 15 U.S.C. § 1604(b)). This Court agrees with *Shields,* 888 F.Supp. at 897:

> Any possible violation springs from the placing of cash in the dealer's pocket under the category of amounts charged to others. But plaintiffs cannot be heard to complain that there was an additional TILA violation in the placement of the charges. That placement was authorized by the regulations, *see* 12 C.F.R. § 226, App. H–3, absolving defendant ... on this point.

Accordingly that aspect of Hernandez' claim is dismissed with prejudice.

■ To return to Hernandez' principal TILA claim, however, Vidmar has identified a new development that threatens to supersede the cases on which Hernandez relies. On December 7, 1995 Board issued a proposed commentary on Reg. Z that covers the specific issue in this case: the disclosure of a service contract fee in a situation in which the creditor retains a portion of that fee (60 Fed.Reg. 62,769). Here is that commentary, applicable to the earlier-quoted Section 226.18(c)(1)(iii):

> A creditor that offers an item for sale in both cash and credit transactions sometimes adds an amount (often referred to as an "upcharge") to a fee charged to a consumer by a third party for a service (such as for a maintenance or service contract) that is payable in an equal amount in both types of transactions, and retains that amount. At its option, the creditor may list the total charge (including the portion retained by it) as an amount paid to others, or it may choose to reflect the amounts in the manner in which they were actually paid to or retained by the appropriate parties.

■ As Vidmar would have it, that should end matters. And indeed, if the proposed commentary (1) were to be approved in its current form and (2) is to be viewed as declaratory of the intended meaning of Section 226.18(c)(1)(iii) rather than as purely prospective (see *Pope v. Shalala,* 998 F.2d 473, 482–86 (7th Cir.1993), holding that agency rules that interpret or clarify, as opposed to effecting a substantive change in, existing law should be applied to disputes that arose before they were promulgated), Vidmar would be right. That is the plain teaching of such cases as *Ford Motor Credit,* 444 U.S. at 565–70, 100 S.Ct. at 796–99, holding that courts are to give great deference to Board's interpretation, construction and application of TILA and Reg. Z, and *Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 219, 101 S.Ct. 2266, 2273–74, 68 L.Ed.2d 783 (1981), stating that Board regulations and interpretations of its own regulations should be accepted by courts absent "some obvious repugnance" to TILA.

Because of that prospect and because the proposed commentary has just reached the stage of Board's invitation for public comment, the situation calls for the current denial of Vidmar's Rule 12(b)(6) motion on the issue under consideration—but clearly without prejudice to its potential renewal when Board adopts the proposed commentary in any form. And to conserve the expenditure of time and energy in activity that may well be mooted by Board's action, this Court now stays all further discovery and other proceedings in this action (including the possibility of taking a fresh look at the class certifi-

cation question) until Board acts officially on the proposed commentary.[7]

### Count II—Consumer Fraud Act

■ As already discussed, TILA and Reg. Z set forth affirmative disclosure requirements that creditors must follow to the letter to avoid liability. In contrast, the Consumer Fraud Act "does not mandate any particular form or subject of disclosure, but rather is a general prohibition of fraud and misrepresentation" (*Lanier v. Associates Fin., Inc.*, 114 Ill.2d 1, 17, 101 Ill.Dec. 852, 859, 499 N.E.2d 440, 447 (1986)). To recover under that state statute a plaintiff must show (1) that defendant engaged in a deceptive act or practice, (2) that defendant intended plaintiff to rely on the deception and (3) that the deception occurred in the course of conduct involving trade or commerce (*Martin v. Heinold Commodities, Inc.*, 163 Ill.2d 33, 75, 205 Ill.Dec. 443, 463, 643 N.E.2d 734, 754 (1994)).

■ Hernandez' Count II has satisfied those requirements in pleading terms. Although Vidmar correctly identifies the need to comply with Rule 9(b) in asserting a Consumer Fraud Act claim (*Appraisers Coalition v. Appraisal Inst.*, 845 F.Supp. 592, 608–09 (N.D.Ill.1994)), that requirement has been met here. Vidmar is also off base in contending that the Complaint's allegations are defective because they do not establish when Hernandez read the Contract or what he understood it to mean. First, there is no requirement of actual reliance under the Consumer Fraud Act (*Martin*, 163 Ill.2d at 76, 205 Ill.Dec. at 463, 643 N.E.2d at 754). Second, although Hernandez will not be able to recover unless he establishes that he suffered some harm proximately caused by the alleged deception (*id.* at 58–61, 205 Ill.Dec. at 455–56, 643 N.E.2d at 746–47; *Duran v.*

*Leslie Oldsmobile, Inc.*, 229 Ill.App.3d 1032, 1039–40, 171 Ill.Dec. 835, 841–42, 594 N.E.2d 1355, 1361–62 (2d Dist.1992), also holding that damages are an essential element of a private cause of action under the Consumer Fraud Act), at this stage it cannot be said that Hernandez will undoubtedly be unable to do so.

But that level of pleading sufficiency does not control here, for the Consumer Fraud Act does not apply at all to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States" (Section 10b(1)). In that respect *Lanier*, 114 Ill.2d at 17–18, 101 Ill.Dec. at 859, 499 N.E.2d at 447 teaches:

> Because the Illinois consumer credit statutes requiring specific disclosures are met by compliance with the Truth in Lending Act, we believe that the Consumer Fraud Act's general prohibition of fraud and misrepresentation in consumer transactions did not require more extensive disclosure in the plaintiff's loan agreement than the disclosures required by the comprehensive provisions of the Truth in Lending Act.

> \* \* \* \* \* \*

> The disclosure in the loan transaction between the plaintiff and the defendant complies with Federal Reserve Board Regulation Z, and thereby comports with the Truth in Lending Act. Because the Act is a law administered by the Federal Reserve Board, we find that, under section 10b(1) of the Consumer Fraud Act, the defendant's compliance with the disclosure requirements of the Truth in Lending Act is a defense to liability under the Illinois Consumer Fraud Act in the present case.

And so the Consumer Fraud Act itself provides that a disclosure that complies with TILA cannot by definition constitute a deceptive act or practice in violation of the state

**7.** Hernandez' response to Vidmar's citation of the proposed commentary urges that it may not apply to Vidmar in any event because of Board's explanation (60 Fed.Reg. 62765 (Dec. 7, 1995)) that the commentary "only applies in cases where a creditor charges the same amount of an upcharge in both cash and credit transactions." Again it makes better sense to await Board's final action before exploring what may be a fact-based question in that respect.

statute. Because Hernandez' Consumer Fraud Act claims are based on the selfsame conduct that allegedly violates TILA, the fates of his Consumer Fraud Act and TILA claims are thus inextricably linked.

■ This opinion has already dismissed Hernandez' TILA claim based on the allegedly misleading placement of the service contract fee, because that placement is specifically authorized by Board's model forms. Hence his Consumer Fraud Act claim based on that same conduct must also be dismissed (accord, *Shields*, 888 F.Supp. at 897–98). And Hernandez' Consumer Fraud Act claim based on the listing of the entire service contract fee as an amount "paid to others" now floats in the same limbo as his parallel TILA claim: It survives the present motion to dismiss (*id.* at 898), but its future fate awaits final action by Board on its proposed Reg. Z commentary.

.

### Count V—Consumer Fraud Act

■ Hernandez' Count V charges that the same conduct that has allegedly breached TILA and the Consumer Fraud Act also violates the Motor Vehicle Retail Installment Sales Act ("Motor Vehicle Sales Act") (815 ILCS 375/5(4)) and consequently the Consumer Fraud Act, specifically its Sections 2E and 2F. Those statutes provide in relevant part:

§ 2E. Any person who is regularly engaged in the business of providing or furnishing merchandise to consumers ... and who has committed in any calendar year 3 or more violations, as determined in any civil or criminal proceeding, of ... the "Motor Vehicle Retail Installment Sales Act" ... is guilty of an unlawful practice within the meaning of this Act.

§ 2F. Any person who is held in any civil or criminal proceeding to have wilfully and materially violated any Illinois statutory provision regulating the extension of credit to borrowers or designed to protect the consumer purchasing merchandise in a credit, as contrasted from a cash, transaction is guilty of an unlawful practice within the meaning of this Act.

To invoke both Section 2E and 2F, Hernandez points to the same provision of the Motor Vehicle Sales Act, 815 ILCS 375/5, which in part requires every motor vehicle installment contract to disclose "clearly, conspicuously and in meaningful sequence" the items described in *id.* 375/5(4):

All other charges, individually itemized, which are included in the amount financed but which are not part of the finance charge.

But like Section 10b(1) with regard to self-contained Consumer Fraud Act claims, 815 ILCS 375/5 also states that any installment contract that complies with TILA or any of its implementing regulations also complies with the Motor Vehicle Sales Act. That being said, it is clear that Hernandez' claims under Sections 2E and 2F are in the same boat as the other Consumer Fraud Act claims discussed in this opinion.

### Conclusion

Hernandez' motion for reconsideration of this Court's prior denial of class certification is granted. That earlier denial is hereby made conditional. As for the substantive matters now before this Court, for the present it denies Vidmar's motion to dismiss except to the extent that Hernandez seeks to

base his claims on a theory of alleged misrepresentation attributable to the placement of the service contract fee in the Contract. Those latter claims are dismissed with prejudice. But because Hernandez' reprieve from total dismissal may be only temporary, this Court stays discovery and all other proceedings in this case until Board has taken official action on the proposed commentary to Reg. Z discussed in this opinion.

# APPENDIX

RETAIL INSTALMENT CONTRACT

[Motor Vehicle]

SIMPLE INTEREST

First of America Bank - Illinois, N.A.
2585 Waukegan Road
[ nnockburn, IL *0014

ACCOUNT NUMBER

AMOUNT OF LOAN          DATE

*(AGNEE)

Buyer & Co-Buyer - . . & Residence Address (include County, Zip Code, Phone & Social Security No.)

EUTIQUIO HERNANDEZ
1712A ARRINGTON CIRCLE
NORTH CHICAGO IL 60064

Seller and Creditor, Corporate Firm, or Trade Name & Business Address

VIDMAR BUICK CO
2521 W. JEFFERSON ST
JOLIET IL 60435

Motor Vehicle Retail Instalment Contract Buyer (which means the undersigned Buyers and Co-Buyers, jointly and severally) having been quoted both a time sale price and a lesser cash price hereby purchases from seller and Seller hereby sells to Buyer on a time price basis, upon the terms and conditions set forth on the face and reverse sides hereof, the following property therein called the "Property ") delivery and acceptance of which in good order hereby are acknowledged by Buyer

| New or Used | Year and Make | Series | Body Style | No. Cyl | Truck Ton Capacity | Manufacturer's Serial Number | Ignition Key Number | Color | Proposed Use |
|---|---|---|---|---|---|---|---|---|---|
| USED | 87 NISSAN | MAXIMA | 4DR | 6 | | JM1HU11P5HT333607 | | SILVER | ☒ Personal ☐ Business ☐ Agriculture |

| ☐ Automatic Trans | ☐ Power Steering | ☐ Power Seat | ☐ Air Conditioner | ☐ Stereo | ☐ Fuel Injection |
|---|---|---|---|---|---|
| ☐ 4 Speed | ☐ Power Brakes | ☐ Power Windows | ☐ Radio | ☐ Bucket Seats | ☐ |
| ☐ Cruise Control | ☐ Diesel | ☐ T-Top | ☐ Tape Deck | ☐ Sunroof | ☐ ACC Group No |

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid after you have made all payments as scheduled | Total Sale Price The total cost of your purchase on credit, including your downpayment of |
|---|---|---|---|---|
| 14.00 % | $ 584.60 | $ 3817.24 | $ 4401.84 | $ 2000.00   $ 6401.84 |

Itemization of the Amount Financed

| | | |
|---|---|---|
| $ 5276.93 | Cash Price | |
| $ 800.00 | Less cash down payment | |
| $ 1200.00 | Less trade-in | |
| $ 3276.93 | Unpaid balance of cash price | |
| $ N/A | Prior balance this Seller | |
| $ 42.31 | Documentary fee | |

Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 24 | $ 183.41 | MONTHLY BEGINNING 03/06/95 |
| | $ | |

Amounts paid to others on your behalf

| Pay-off of prior loan | $ | N/A |
|---|---|---|
| To | | |
| $ 274.43 | Public officials (license, title & taxes) | |
| $ N/A | Insurance Companies | |
| $ 498.00 | to ADVANTAGE | |
| $ | to | |
| $ | to | |
| $ 3817.24 | Amount Financed | |

### Insurance

Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost

| Type | Premium | Signature |
|---|---|---|
| Credit Life for Term of Credit | $ N/A | I/we want credit life insurance ____ Signature |
| | | Signature |
| Credit Disability for Term of Credit | $ | I want credit disability insurance ____ Signature |
| Credit Life and Disability for Term of Credit | $ | I want credit life and disability insurance, ____ Signature |

DESCRIPTION OF TRADE-IN
88 FORD
(Year and Make)

1FAPP93JI N359568
(Serial Number)

$ 1200.00
(Gross Allowance)

$ N/A
(Amount Owing)

You may obtain property insurance from anyone you want that is acceptable
to ____
from ____ N/A months    If you get the insurance, you will pay $ ____ N/A ____ for the
term of ____ N/A months

Security: You are giving a security interest in: ☒ the goods or property being purchased ☒ right of set-off against . s any moneys, credits or other property of yours in the possession of the Holder, on deposit or otherwise. Collateral securing other loans with us may also secure this loan.
☐ (brief description of other property)

Late Charge: If any payment is late for more than 10 days you will be charged 5% of the payment, or $5.00 on payments of $100.00 or less.
Prepayment: If you pay off early, you may have to pay a penalty.
See your contract terms on face and reverse side for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED.

For details of possible refund for Credit Life or Credit Disability see notice on reverse side.

### NOTICE OF PROPOSED GROUP CREDIT LIFE INSURANCE

If a charge is made in the ITEMIZATION OF AMOUNT FINANCED for credit life insurance and if such insurance is to be procured by Seller or Assignee the undersigned takes notice that decreasing term insurance written under a Group Credit Life Insurance Policy is to be purchased on the life of the Buyer(s) whose signature(s) appear above, subject to acceptance by the Insurer and issuance of a certificate by

____ (Insurer)

____ (Home Office Address)

FOR DETAILS SEE NOTICE OF PROPOSED GROUP CREDIT LIFE INSURANCE ON REVERSE SIDE OF BUYER'S COPY

Payment Schedule: Buyer hereby agrees to pay to Seller the Amount Financed shown above together with a Finance Charge on the principal balance of the Amount Financed from time to time unpaid at the rate of 14.00% per annum from date until maturity in 23 instalments of $ 183.41 each and a final instalment of $ 183.41 beginning on MAR 06 , 19 95 and continuing on the same day of each successive month thereafter until fully paid. A Fee of $15.00 will be charged for any returned instalment payment.
All payments shall be first applied to accrued interest to day of actual payment with the remainder applied to the unpaid balance of the principal. The amount of the final instalment will be adjusted to reflect any accrued and unpaid interest resulting from early or late payment of any instalments. After maturity of the final instalment, interest shall accrue at the rate of ____ % per annum until fully paid. Interest shall be computed on the basis of a 365 day year and charged for the actual number of days elapsed.
Late Charge: Buyer agrees to promptly pay to the legal Holder hereof a delinquency charge on each instalment that is 10 days past its due date, equal to 5% of the instalment, or $5.00 on instalments of $100.00 or less.
Default Charge: Buyer agrees to pay court costs and reasonable attorneys' fees incurred by Holder in the collection or enforcement of Debt. In the event of any default hereunder, (as detailed on reverse side hereof) the entire balance may be declared due and payable
Security Interest: Seller shall have a security interest under the Uniform Commercial Code in the Property (described above) and in the proceeds thereof to secure the payment in cash of the Total of Payments and all other amounts due or to become due hereunder. Holder is granted a right of set-off or lien on any deposit or sums now or hereafter owed by Holder to Buyer(s).
Rebate for Prepayment: Buyer may prepay this contract in full at any time before maturity of the final instalment less an acquisition cost of $25.00.
If insurance premiums were prepaid, as shown above, Buyer will receive a refund from the selling agent on the basis of the "Rule of 78ths"
If this contract evidences the sale of a used motor vehicle, (1) Buyer acknowledges receipt of the original or a true copy of the "Buyers Guide" form displayed by Seller on the side window of the used motor vehicle; and (2) THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS A PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISION IN THE CONTRACT OF SALE.

NOTICE TO THE BUYER: 1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due.

Buyer acknowledges receipt of a fully completed copy of this contract executed by both Seller and Buyer. Guarantor, if any, acknowledges receipt of completed copies of this contract and of the Explanation of Guarantors' Obligation.

Dated, FEB 04 , 19 95

VIDMAR BUICK CO
SELLER

By ____
TITLE

RETAIL INSTALMENT CONTRACT

Buyer Signs ____
Co-Buyer Signs ____

. NOT NEGOTIABLE .

Guarantor ____
I hereby guarantee the collection of the above described amount upon failure of the seller named herein to collect said amount from the buyer named herein

COPYRIGHT 1972          BUYER'S COPY          FORM #0987587 11/94