**Chantal RITTER, on behalf of herself and all others similarly situated, Plaintiffs**

v.

**DURAND CHEVROLET, INC., Durand Chevrolet–Oldsmobile–Geo, and Baybanks, Defendants.**

**Civil Action No. 96–10282–EFH.**

United States District Court,
D. Massachusetts.

Nov. 21, 1996.

---

Paul R. Kelley, Neville, Kelley, Neville, Bellotti & Barretto, Cambridge, MA, Jayant W. Tambe, James R. Daly, Jones, Day, Reavis & Pogue, Chicago, IL, for Durand Chevrolet, Inc., Durand Chevrolet–Oldsmobile–Geo.

Michael K. Callahan, David H. Gibbs, Peabody & Brown, Boston, MA, for Baybanks.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

The matter comes before this Court on a Motion for Summary Judgment filed by defendants as to Counts I and II. This Court has previously addressed and dismissed Count III of the plaintiff's complaint on Defendants' Motion to Dismiss as to Defendant Baybanks. *See Ritter v. Durand Chevrolet, Inc.*, 932 F.Supp. 32 (D.Mass.1996).

### Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The Court will "review the facts in a light most favorable to the non-moving party, drawing all inferences in the non-moving party's favor." *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 259 (1st Cir.1994).

### Facts

On or about February 11, 1995 the plaintiff purchased on credit a used GEO Tracker from Durand Chevrolet, Inc. The plaintiff financed her purchase by entering into a 42–month retail installment contract/Truth in Lending Disclosure Statement [retail installment contract] with Durand Chevrolet, Inc. Baybank, N.A., is the assignee and holder of plaintiff's retail installment contract.

At the time of the purchase, the plaintiff paid a $39.00 premium for Vendor's Single Interest Insurance ("VSI"). VSI insurance provides coverage for loss of collateral to the insured lender, which is Baybank, N.A. The VSI insurance premium included traditional VSI coverages ("All Risk Physical Damage Loan Insurance" for $34.00 and "Confiscation and Skip Insurance" for $3.75) and non-VSI coverages ("Instrument Non–Filing Insurance" for $1.00 and "Repossessed Vehicles Coverage" for $0.25). According to the declaration page of the VSI insurance policy entered into by Baybank, N.A. and U.S. Specialty Insurance Co., $37.75 of the $39.00

premium is attributable to traditional VSI insurance coverages and $1.25 is attributable to non-VSI insurance coverages. Under the terms of this VSI insurance policy, U.S. Specialty Insurance Co. waived its right to subrogation against all persons in the position of the plaintiff.

According to the terms of the retail installment contract entered into by the plaintiff and Durand Chevrolet, Inc., the VSI insurance premium is not included in the "Finance Charge" section but is listed in the "Amount Financed" section. The retail installment contract at issue also contains clear and conspicuous disclosures that the agreement contains a VSI insurance premium and that the plaintiff could obtain such insurance from a person of her choosing.

### Rulings of Law

In Count I of the complaint the plaintiff alleges that the defendants violated the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, and the regulations promulgated thereunder by the Board of Governors of the Federal Reserve Board ("FRB"), 12 C.F.R. Part 226 ("Regulation Z"), and the Massachusetts Truth in Lending Act, Mass. Gen.L. ch. 140D. In Count II, plaintiff alleges that the defendants violated the Massachusetts Motor Vehicle Retail Installment Sales Act ("MVRISA"), Mass.Gen.L. ch. 255B, § 14. In brief, the plaintiff contends that the $39.00 VSI insurance premium should have been included in the "finance charge" section in the plaintiff's retail installment contract.

All parties agree that under the TILA and Regulation Z, VSI insurance premiums may be excluded from the "finance charge" if:

(1) the retail installment contract discloses the cost of VSI insurance, 15 U.S.C. § 1605(c);

(2) the retail installment contract discloses that VSI coverage may be obtained from a person of the consumer's choice, 15 U.S.C. § 1605(c);

(3) the VSI insurer waives his right to subrogation, 15 U.S.C. § 1605(c) and 12 C.F.R. Part 226.4(d)(2); and

(4) in the case of a multi-year VSI insurance policy, the premium in fact attributable to all the non-VSI coverages included in the policy is $5.00 or less. 12 C.F.R. Part 226, Supp. 1.

It is also beyond question that Durand Chevrolet, Inc., and Baybank, N.A., have complied with the plain language of the above conditions. The plaintiff contends, however, that in order to determine the premiums in fact attributable to all the non-VSI coverages, the defendants must submit to an actuarial analysis as to what claims have been filed and what payments have been made under the various coverages included in the $39.00 premium.

The defendants in this case have complied with the plain language of the TILA and Regulation Z. They have entered into a VSI insurance policy with U.S. Specialty Insurance Co. in an arm's length transaction. The complaint fails to allege, nor did the plaintiff at oral argument suggest, any bad faith or unfair dealings concerning Baybank, N.A.'s contractual agreement with U.S. Specialty Insurance Co. U.S. Specialty Insurance Co. is not even named as a defendant in this matter. The plaintiff does not allege in the complaint any misallocation of VSI premiums. The plaintiff suggests, without citation to any authority, that this Court and the defendants cannot rely on the allocation of premiums provided by a third-party insurance company.

The plaintiff has failed to set forth any facts which show that there is a genuine issue of fact left for trial. At oral argument the plaintiff's counsel admitted that at the time he filed this case he had no basis in fact to support his claim. An actuarial analysis of the allocation of the $39.00 VSI insurance premium he believes would confirm his suspicions that his client has an actionable claim. The defendants put it best in their Reply to Plaintiff's Second Preliminary Response to Defendants' Motion for Summary Judgment: "Plaintiff's counsel's 'ready, fire, aim' approach to litigation is contrary to the requirements of Fed.R.Civ.P. 11."

"TILA is a remedial statute." *Dixon v. S & S Loan Service of Waycross, Inc.,* 754 F.Supp. 1567, 1570 (S.D.Ga.1990). Its reme-

dial objectives are achieved by imposing strict liability on creditors when mandated disclosures are not made. *Ibid.* Therefore, " 'liability will flow from even minute deviations from the requirements of the statute' and the regulations promulgated under it." *Ibid.* (quoting *Shroder v. Suburban Coastal Corp.,* 729 F.2d 1371, 1380 (11th Cir.1984)).

Neither the TILA nor Regulation Z nor Official Staff Commentaries of the FRB set forth any requirements concerning a third-party insurance company's allocation of premiums in a VSI insurance policy. Nor do the above authorities set forth any requirement that the creditor who enters into such a policy investigate or perform an actuarial analysis of the allocation of premiums by a third-party insurance company. In the application of the TILA to consumer credit, the Congress was mindful of the fact that creditors needed guidance in the field. *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). As a result, Congress specifically designated the FRB to interpret and apply the TILA. *Ibid.* Congress further provided creditors with the defense of good-faith compliance with the FRB's regulations and interpretations in a cause of action under TILA. *Id.* at 567, 100 S.Ct. at 797. It is clear that Baybank, N.A., has not deviated from the requirements of any specific provision of the TILA, Regulation Z or any FRB Official Staff Commentaries addressing VSI insurance.

Nevertheless, the plaintiff urges this Court to apply to VSI insurance the FRB's regulations for guaranteed automobile protection ("GAP") agreements. The Supreme Court, however, has directed District Court Judges "to refrain from substituting their own interstitial lawmaking for that of the Federal Reserve." *Id.* at 568, 100 S.Ct. at 798. It is clear that "caution must temper judicial creativity in the face of legislative or regulatory silence." *Id.* at 565, 100 S.Ct. at 797. Therefore, this Court refuses to apply the FRB's regulations on GAP agreements to VSI insurance.

The simple purpose of the TILA is to promote the "informed use of credit" by consumers. *Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 219, 101 S.Ct. 2266, 2273–74, 68 L.Ed.2d 783 (1981). "The TILA does not require that a loan be structured most advantageously to the consumer, only that the creditor accurately disclose the terms so as to permit comparison of credit terms." *Therrien v. Resource Financial Group, Inc.,* 704 F.Supp. 322, 326 (D.N.H.1989). This the defendants have done. The plaintiff's position, in effect, is that a creditor's compliance with the plain language of the TILA, Regulation Z, and the FRB Official Staff Commentary is futile. The Court is not persuaded that it would be reasonable to require defendants to undertake an actuarial analysis of the allocation of a third-party insurance company's premium prior to entering into a VSI insurance policy when the premium in fact attributable to all the non-VSI coverages included in the policy is on its face less than $5.00, as is the case here.

In Count II, the plaintiff alleges a violation of Mass.Gen.L. ch. 255B, § 14. Since Count II is predicated upon the same alleged violation that forms the basis of Count I, and where Count I fails as a matter of law, the plaintiff's claim under Count II must also fail. Defendants' Motion for Summary Judgment is granted.

SO ORDERED.