Rogers v. Assurance Mortgage Corp.    CV-96-19-SD    03/13/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Barbara Rogers;
Olive Kasouf


        v.                              Civil No. 96-19-SD


Assurance Mortgage Corporation
 of America


O R D E R


This civil action arises from some allegedly improper disclosures made by defendant Assurance Mortgage Corporation of America (Assurance) in connection with a mortgage loan. Plaintiffs Barbara Rogers and Olive Kasouf claim in their complaint that Assurance violated the Truth in Lending Act (TILA), 15 U.S.C. § 1601, et seq., and the New Hampshire Consumer Protection Act, Revised Statutes Annotated (RSA) 358-A. Plaintiffs seek statutory damages and actual damages under TILA, among other remedies, but do not seek rescission.

Presently before the court is defendant's motion for summary judgment, to which plaintiffs object.[1]

---

[1]The court has also reviewed the parties' supplemental memoranda.

<u>Background</u>[2]

On November 14, 1994, plaintiffs applied to Assurance for a mortgage loan to finance a house in Derry, New Hampshire, that they were planning to purchase on December 9, the scheduled closing date. When they applied for the loan, plaintiffs specifically told Assurance that they wanted a fixed rate, thirty-year mortgage with no prepayment penalty. At that time one of Assurance's sales representatives told plaintiffs they could receive a thirty-year mortgage at a 10.25 percent fixed rate of interest.

On December 9 plaintiffs received a written disclosure of the terms of the loan, indicating that it would be a thirty-year, variable rate loan with no prepayment penalty. They also received TILA disclosures indicating that the loan would be a thirty-year mortgage with a variable rate and no prepayment penalty. Plaintiffs informed the Assurance sales representative that the terms offered were incorrect because of the variable rate, and he agreed that a mistake had been made and that they would get the terms they had requested. On two more occasions, December 15 and December 21, Assurance offered new terms that

_____

[2]The facts in the Background section are taken from the complaint and are recited here for informational purposes only. The evidence relied upon by the court in deciding the summary judgment motion shall be presented in the Discussion section.

again were not what plaintiffs had been seeking.  The sales representative again told them that an error had been made and that they would get the earlier-requested terms.

At the date of closing, January 13, 1995, Assurance gave plaintiffs new loan terms: the loan was to be at a variable rate (starting at 9.9 percent) and had a balloon feature.  Upset by these new terms, plaintiffs telephoned Assurance and were told they were better off with this loan than with the 10.25 percent fixed rate and that they could refinance later.  They were also told the monthly payment would never exceed the disclosed amount of $1,209.47.

Afraid they would lose the Derry house if they did not sign the loan at the date of closing, plaintiffs signed the papers.[3] They were only briefly shown the documents and were told that the paperwork contained many errors.  Assurance immediately took the documents back from them and told them they would receive corrected copies of said papers by mail at a later date.

When they received the papers, plaintiffs learned that the note had a prepayment penalty and a variable rate of interest capped at 18 percent.  Six months after the closing, the rate automatically went up three percentage points.  At the time of

---

[3]Plaintiffs now assert by affidavit that they actually did not sign the papers at the time of closing, but instead signed a post-dated version at a later time.

filing of the instant action, plaintiffs' monthly payments had risen as high as $1,255.65. In addition, plaintiffs had discovered discrepancies between the TILA disclosure agreement and the actual costs of borrowing the money as shown on the HUD-1 closing statement.

## Discussion

### 1. Summary Judgment Standard

Summary judgment shall be ordered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case." Celotex Corp. v. Catrett,, 477 U.S. 317, 322-23 (1986). It is not sufficient to "'rest upon mere

4

allegation[s] or denials of his pleading.'" LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, supra, 477 U.S. at 256), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994). Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party." Id. at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the non-moving party's favor. Anderson, supra, 477 U.S. at 255.

## 2. Court I--TILA

"The Truth in Lending Act has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers." Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 559 (1980) (quoting 15 U.S.C. § 1601).

TILA requires that certain disclosures be made before credit is extended. See 15 U.S.C. § 1638(b)(1). Such disclosures include, inter alia, the "amount financed" (the amount of credit of which the consumer has actual use), the "finance charge,"[4] as

---

[4] The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as

well as explanations of these terms and of any late charges which may be imposed.  15 U.S.C. § 1638(a).  Also required is disclosure of the finance charge expressed as an "annual percentage rate."  15 U.S.C. § 1638(a)(4).  The disclosures must be meaningful, but need not include so much information as to overload the senses or to create confusion.  See Bizier v. Globe Fin. Servs., 654 F.2d 1, 4 (1st Cir. 1981).

When interpreting TILA, courts must liberally construe its provisions in favor of borrowers.  See Bizier v. Globe Financial Servs., 654 F.2d 1, 3 (1st Cir. 1981).  This is because the Act, as originally enacted, was "intended to balance scales thought to be weighted in favor of lenders."  Id.  In light of this original purpose, courts generally require a strict, technical adherence to the requirements set forth in TILA and its implementing regulations.  See, e.g., Purtle v. Eldridge Auto Sales, Inc., 91 F.3d 797, 800-02 (6th Cir. 1996); Cowen v. Bank United of Texas, FSB, 70 F.3d 937, 941 (7th Cir. 1995); Fairley v. Turan-Foley Imports, Inc., 65 F.3d 475, 479 (5th Cir. 1995); Hernandez v. Vidmar Buick Co., 910 F. Supp. 422, 425 (N.D. Ill. 1996); cf. Ritter v. Durand Chevrolet, Inc., 945 F. Supp. 381, 384 (D. Mass.

---

an incident to or a condition of the extension of credit.  It does not include any charge of a type payable in a comparable cash transaction.

12 C.F.R. § 226.4(a).

1996) (under TILA, "liability will flow from even minute deviations from the requirements of the statute and the regulations promulgated under it" (quotations omitted)).  Such scrutiny is required even if a violation caused the borrower no harm.  See, e.g., Cowen, supra, 70 F.3d at 940.[5]  Finally, such an approach is particularly appropriate where, as here, a plaintiff seeks an award of statutory damages, which TILA, 15 U.S.C. § 1640(a), caps at $1,000.  See Purtle, supra, 91 F.3d at 801-02 (discussing "technical adherence" in the context of a claim for statutory damages).

According to plaintiffs, defendant failed to provide meaningful disclosures at the operative time, January 13, 1995,[6] in compliance with TILA.  By affidavit, plaintiff Barbara Rogers states that Assurance showed her and plaintiff Olive Kasouf the TILA disclosures and the HUD-1 document, but did not give them copies of the documents at the January 13 closing.  Instead,

---

[5]The court pauses to note here that recent developments have counseled against applying such a liberal approach to all cases brought under TILA.  Thus, Congress has tightened this consumer-friendly approach to TILA in some respects that will be discussed infra.

[6]Regulation Z clarifies that the timing of the disclosures should be before "consummation of the transaction."  12 C.F.R. § 226.17(b).  Plaintiffs assert, and defendant does not appear to dispute, that defendant was obligated to provide the requisite disclosures on January 13, 1995, the date of signing of the promissory note and the mortgage deed to the property.

Assurance informed them that because the documents contained errors, a corrected version would be mailed out at a later date.  Rogers further states that they were only "briefly" shown the documents at the closing and that plaintiffs did not sign them until a month later when they received documents dated January 13, 1995, in the mail.  In addition, plaintiffs point out that the signed disclosures indicate that the figures are "estimates" and that defendant had previously sent them many written disclosures by mail that contained incorrect terms and created confusion.

Congress delegated expansive authority to the Federal Reserve Board "to elaborate and expand" the laws regulating commerce in credit.  Ford Motor Credit Co., supra, 444 U.S. at 555-56.  Pursuant to that responsibility, the Board promulgated Regulation Z, 12 C.F.R. Part 226 (1979); thus, interpretation of TILA requires an initial examination of both TILA and Regulation Z.  See id. at 556.

The pertinent regulation states,

> The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18.

12 C.F.R. § 226.17(a) (footnotes omitted).

8

When considered as a whole, plaintiffs' evidence raises a genuine issue of material fact regarding whether Assurance provided plaintiffs with meaningful disclosures before extending them credit. The evidence indicates that Assurance may have violated several of the provisions of Regulation Z, including, inter alia, the requirements that disclosure be before the extension of credit, see 12 C.F.R. § 226.17(b), and that disclosure be "in a form that the consumer may keep," see 12 C.F.R. § 226.17(a). In addition, as the necessary information likely was known to Assurance, its provision of estimates may have violated 12 C.F.R. § 226.17(c), which provides that estimates should be given when necessary information is unknown to the creditor.

Admittedly, the issue of whether a violation occurred is a close one in these circumstances. Plaintiffs in their objection do depart somewhat from the facts they stated in the complaint, particularly the allegation that they signed the TILA disclosure form at closing. However, even assuming that plaintiffs did sign a version of the TILA disclosure form at the time of closing, the court agrees with plaintiffs that defendant should not have taken back that form and mailed another one to plaintiffs several weeks later. Moreover, the defendant has not submitted any evidence in rebuttal on this issue. When the requirements of TILA are

9

construed liberally in favor of plaintiffs, who undoubtedly did not possess the degree of knowledge and experience in lending transactions possessed by defendant, the court cannot find that defendant is entitled to summary judgment on the issue of its compliance with TILA and Regulation Z.  A reasonable jury could find that plaintiffs were not given the type of "clear and conspicuous" disclosure mandated by TILA.

Plaintiffs also assert that Assurance violated TILA by understating the finance charge on the TILA disclosure form. Analysis of this claim requires consideration of recent amendments to TILA.

In 1995 Congress amended TILA by adding section 1649, entitled "Certain limitations on liability."  See TILA, 15 U.S.C. § 1601, et seq., as amended by Pub. L. No. 104-29, § 4(a), 109 Stat. 273, and Pub. L. No. 104-208, § 2107(a), 101 Stat. 3009-____ (codified at 15 U.S.C. § 1649 (Supp. 1997)).[7]  With the addition of these amendments, Congress hoped to reduce the high

_____

[7]Although the alleged violative conduct occurred before the effective date of the amendments, September 30, 1996, the amendments clearly apply to this case nonetheless.  Congress provided that section 1649(a) (the section applicable to the case at bar) shall not apply to individual actions filed before June 1, 1995.  15 U.S.C. § 1649(b).  The court interprets this clause to mean that the amendments are to be retroactively applied to actions filed on or after June 1, 1995.  Since the case at bar qualifies as such an action, the amendments are applicable.

10

number of class action lawsuits brought to redress technical errors in the disclosure requirements. See Cavaliere v. Margaretten & Co., 1996 WL 571178, at *1-2 (D. Conn. 1996); H.R. Rep. No. 104-193, at 256-257 (1995). Congress viewed the amendments as a means of providing "a greater tolerance for 'honest mistakes that result in technical violations,' thus providing 'greater certainty for lenders without eliminating the substantive protection available to consumers.'" Cavaliere, supra, 1996 WL 571178, at *2 (quoting 141 CONG. REC. S14566).

The new amendments provide for a $200 tolerance. A court may treat any disclosure relating to the finance charge as accurate if the amount disclosed as the finance charge does not differ from the actual finance charge by more than $200. See 15 U.S.C. § 1649(a)(3)(A). Consequently, a creditor will have no civil liability with respect to any such disclosure. Id.

Plaintiffs claim that the $200 tolerance was exceeded because the finance charge was understated with respect to several fees. For the purposes of this analysis, the relevant fees are the document preparation fee (listed in the TILA disclosure form as $165), the underwriting document preparation fee (disclosed as $200), and the processing fee (disclosed as $300). The court will address each fee seriatim.

Document preparation fees that are not loan related are

11

normally excluded from the calculation of the finance charge by virtue of 12 C.F.R. § 226.4(c)(7)(ii). This section provides,

> **§ 226.4 Finance charge.**
> . . . .
>    (c) *Charges excluded from the finance charge.* The following charges are not finance charges:
>    . . . .
>       (7) The following fees in a transaction secured by real property or in a residential mortgage transaction, if the fees are bona fide and reasonable in amount:
>       . . . .
>          (ii) Fees for preparing deeds, mortgages, and reconveyance, settlement, and similar documents.

Plaintiffs assert that the disclosed $165 document preparation fee, which was itemized under the heading "Itemization of Amount Financed," should have been included in the finance charge because the fee is not reasonable or bona fide as required by section 226.4(c)(7). To support that the document preparation fee was reasonable, defendant submitted an affidavit of one of its vice presidents of lending. <u>See</u> Affidavit of Jerami A. Marshal (attached to defendant's motion). He states that the document preparation fee is distinct from the "underwriting document preparation fee" and that it includes

> the cost of the document preparation, which includes reviewing documents prior to release to the closing agent, re-verifying the employment, coordinating the documents for closing with the closing agent, reviewing the HUD-1 settlement statement, forwarding documents to the closing agent, and, in this case, relate to documentation

12

> prepared by Ford Consumer Finance Company, Inc.
> who is an investor to whom Assurance sells loans.

Marshal Affidavit ¶ 15.  Plaintiffs argue that the closing was scheduled and canceled four times before being held finally on January 13, 1995, and surmise they were charged for revisions and corrections caused by the frequent changing of dates. Plaintiffs' argument fails for the simple reason that they have failed to produce any evidence to support their contention; they offer only their own deductions and conclusory assertions in place of the type of evidence required to withstand a motion for summary judgment.  There is no evidence that the charge even reflects the costs, if any, incurred by the frequent changing of dates.  Even assuming arguendo that evidence of same existed, plaintiffs have produced no competent evidence that the fees were unreasonable.  The disclosed $165 fee was thus correctly excluded from the finance charge, and the finance charge cannot be found to have been understated by this amount.  Accordingly, the defendant is entitled to summary judgment on this issue.

Plaintiffs next claim that the $200 tolerance was exceeded because the underwriting document preparation fee was listed in the TILA disclosure form under both the "Amount Financed" column and the "Prepaid Finance Charge" column.  The 1996 amendments to TILA provide in relevant part,

## § 1649.  Certain limitations on liability.

### (a) Limitations on Liability

For any closed end consumer credit transaction that is secured by real property or a dwelling, that is subject to this subchapter, and that is consummated before September 30, 1995, a creditor . . . shall have no civil, administrative, or criminal liability under this subchapter for, and a consumer shall have no extended rescission rights under section 1635(f) of this title with respect to--
> (1) the creditor's treatment, for disclosure purposes of--
> . . . .
>> (B) fees described in section 1605(e)(2) and (5) of this title; . . . .

15 U.S.C. § 1649.  The fees described in § 1605(e)(2) are "[f]ees for preparation of loan-related documents."[8]  Accordingly, under the express terms of the 1996 amendments to TILA, defendant cannot be held liable for failing to accurately disclose the "underwriting document preparation fee," which is a loan-related document preparation fee.  The court finds and rules that defendant is entitled to summary judgment on this issue.

Lastly, plaintiffs assert that the processing fee (disclosed on the TILA disclosure form as $300) was not included in the finance charge, and thus the finance charge was understated by $300.  Defendant submitted evidence that the $300 processing fee

---

[8]This section also provides that such fees are exempted from the computation of the finance charge in extensions of credit secured by an interest in real property.  See Pub. L. No. 104-29 §§ 2(a), (b)(1), (c)-(e), 3(a), 198 Stat. 271, 272 (codified at 15 U.S.C. § 1604(e)(2) (Supp. 1997)).

is a fee charged to cover the processing of a loan and provides a list of seven services covered by the fee. See Marshal Affidavit at ¶ 19. Marshal further states that the $300 fee was included in the TILA disclosure form under the finance charge at the line entitled "Other Prepaid Finance Charges," which lists an amount of $522.50. Despite plaintiffs' assertions to the contrary, they fail to submit competent evidence to rebut defendant's evidence and withstand summary judgment.[9] Accordingly, the court finds and rules that the $300 processing fee was included within the disclosed finance charge, and thus there is no discrepancy between that fee and the actual fee, listed in the HUD-1 as $300. Defendant is thus entitled to summary judgment on this issue as well.

## Conclusion

For the reasons stated above, the court grants in part defendant's motion for summary judgment (document 6). The

---

[9]The court further notes that, being loan related, the processing fee cannot serve as the basis for defendant's liability. See 15 U.S.C. § 1649(a)(1)(B).

plaintiffs may go forward with their TILA claim, but only to the extent not inconsistent with this order.

    **SO ORDERED.**


_____
Shane Devine, Senior Judge
United States District Court

March 13, 1997

cc:    Peter S. Wright, Jr., Esq.
       R. James Steiner, Esq.