(No. 71860.—

DAVID SPITZ *et al.*, Appellees, v. GOLDOME REALTY CREDIT CORPORATION, Appellant.

*Opinion filed September 24, 1992.*

72

Baker & McKenzie, of Chicago (Francis D. Morrissey, Michael A. Pollard, Sidney M. Kaplan, Victor M. Grimm and Sheri A. Jorgensen, of counsel), for appellant.

Alvin W. Block and Jerome E. Boyle, of Alvin W. Block & Associates, of Chicago, for appellees.

JUSTICE MORAN delivered the opinion of the court:

Plaintiffs, David and Barbara Spitz, filed a class action complaint against defendant, Goldome Realty Credit Corporation, a subsidiary of a federally chartered savings and loan association, in the circuit court of Cook County. According to their complaint, plaintiffs alleged that the defendant did not notify them in writing of the requirements of the Mortgage Escrow Account Act (Act) (Ill. Rev. Stat. 1985, ch. 17, par. 4901 *et seq.*). Defendant filed a motion to dismiss in which it maintained that plaintiffs' complaint failed to state a cause of action, because the Act was preempted by Federal law. The court granted defendant's motion and plaintiffs appealed. The appellate court reversed, finding that the "subsidiary service corporations of Federal savings associations are subject to State regulation, as long as that regulation does not conflict with existing Federal law." (210 Ill. App. 3d 215, 222.) This court granted defendant's petition for leave to appeal (134 Ill. 2d R. 315(a)).

The only issue presented for review is whether Federal preemption precludes application of the Act to the defendant.

Plaintiffs sought a mortgage loan from defendant in order to purchase a single-family home. Plaintiffs were required by defendant to establish a tax-escrow account to obtain a loan. The Act mandates that "the requirements of the Act shall be furnished in writing to the borrower." (Ill. Rev. Stat. 1985, ch. 17, par. 4911.) However, plaintiffs were not given written notification by defendant, contrary to the Act, that "[i]n lieu of the mortgage lender establishing an escrow account or an escrow-like arrangement, a borrower may pledge an interest bearing time deposit with the mortgage lender in an amount sufficient to secure the payment of anticipated taxes" (Ill. Rev. Stat. 1985, ch. 17, par. 4906).

Defendant is a wholly owned subsidiary service corporation of Goldome Secondary Markets, Inc., which is itself a wholly owned subsidiary of Goldome Federal Savings Bank (Goldome). At all times relevant to this appeal, Goldome was a federally chartered savings and loan association subject to regulation by the Federal Home Loan Bank Board (the Board). According to its motion to dismiss, defendant maintained that as a subsidiary of a federally regulated savings and loan association, its operations were preempted by the Home Owners' Loan Act of 1933 (12 U.S.C. §1461 *et seq.* (1988)) and the regulations promulgated thereunder (12 C.F.R. §545 *et seq.* (1987)). Secondly, defendant maintained that the relevant provision of the Act was in direct conflict with Federal law. Defendant essentially raises the same two preemption arguments in this court.

The supremacy clause of the United States Constitution provides, in relevant part, as follows: "[T]he Laws of the United States *** shall be the supreme Law of the Land; *** any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." (U.S. Const., art. VI.) Whether a Federal law is preemptive of a State law depends upon Congress' purpose in enacting the statute. (*National Commercial Banking Corp. of Australia, Ltd. v. Harris* (1988), 125 Ill. 2d 448, 463.) This court must inquire whether Congress intended to preempt State law. (*Harris*, 125 Ill. 2d at 463.) To properly address this inquiry, this court is guided by some well-established principles articulated by the Supreme Court:

> "Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because '[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because 'the Act of Congress may touch a field in which the fed-

eral interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose.' [Citation.]

Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' [citation] or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' [citation]." (*Fidelity Federal Savings & Loan Association v. de la Cuesta* (1982), 458 U.S. 141, 153, 73 L. Ed. 2d 664, 675, 102 S. Ct. 3014, 3022.)

The Court also stated that Federal regulations have the same preemptive effect as Federal statutes, provided the administrator did not exceed his statutory authority or act in an arbitrary manner. *Harris*, 125 Ill. 2d at 464.

Defendant first argues that because the Act regulates home mortgage lending, a subject of the operations of a Federal savings and loan association, it is preempted by the Home Owners' Loan Act. Plaintiffs maintain that the laws affecting the operations of a Federal savings and loan institution are not at issue here, because defendant is a service corporation, not a savings and loan.

The relevant Federal regulation provides, in part, as follows:

"The regulations in this Part 545 are promulgated pursuant to the plenary and exclusive authority of the Board to regulate all aspects of the operations of Federal associations, ***. This exercise of the [Board's] authority is preemptive of any state law purporting to address the subject of the operations of a Federal association." (12 C.F.R. §545.2 (1987).)

While it is true that home mortgage lending is a subject of the operations of a savings and loan, a service corpo-

ration is also permitted to engage in home mortgage lending. (12 C.F.R. §545.74(c)(1)(i) (1987).) Thus, the precise issue is whether Congress intended to regulate the home lending operations of service corporations to the same extent that it regulates such lending operations of savings and loan associations. For the reasons set forth below, this court finds that Congress did not intend to equally regulate the lending activities of service corporations and Federal savings and loan associations. Several opinion letters of the Board support our holding.

An administrative agency's interpretation of a statute should be accorded considerable deference provided "Congress has not expressed its intent with respect to the question, and then only if the administrative interpretation is reasonable." (*Presley v. Etowah County Comm'n* (1992), 502 U.S. ___, ___, 117 L. Ed. 2d 51, 67, 112 S. Ct. 820, 831.) In a letter dated November 21, 1988, the deputy general counsel for the Board addressed the issue of whether the preemption doctrine rendered an Arizona mortgage-broker-licensing law inapplicable to a wholly owned service corporation of a federally chartered savings bank. Counsel stated that the statute, as it applied to the subsidiaries of Federal associations, was not preempted by Federal law. Counsel reasoned, in part, as follows:

> "Service corporations of federal associations have significant differences from their parent organizations. While federal associations are chartered by the Bank Board, the service corporations are state chartered. They must be organized under the laws of the state in which their parent federal association's home office is located.
>
> * * *
>
> Although service corporations are regulated by the Bank Board, they are not regulated to the same extent as federal associations. Moreover, neither Congress nor the Bank Board has expressed an intent to preempt state law by occupying the field with regard to the service corpora-

tions of federal associations. In this regard, it is contemplated that there would be a system of dual federal and state regulation." F.H.L.B.B. Opinion Letter, November 21, 1988.

See also F.H.L.B.B. Opinion Letter, April 28, 1987 ("The service corporations of federal associations which engage in residential mortgage lending or in other approved activities are under obligations to comply with state law"); F.H.L.B.B. Opinion Letter, September 16, 1986 (Wisconsin law "is not preempted with respect to transactions between subsidiaries or affiliates that are not Federal associations"); but see O.T.S. Opinion Letter, November 30, 1990 (State law which purports to govern operations of an agency office of a Federal savings association is preempted by Federal regulation. "Agency offices *** are distinguishable from an association's service corporation, since the agency office is simply one aspect of the way the association conducts its own business; it is not a corporate entity separate from the association").

Defendant maintains in his reply brief that the opinion letters are not reasonable because the general counsel of the Board has been inconsistent on the preemption issue presented here. Defendant's argument is without merit. It is true that in an opinion letter dated August 13, 1985, then general counsel Norman H. Raiden stated that the Board did not have a position on whether preemption would exist on loans originated by service corporations. (F.H.L.B.B. Opinion Letter, August 13, 1985.) But since then, as noted above, the Board has stated that, absent a direct conflict (*i.e.*, a State law which would expand upon the permitted activities of a Federal association's service corporations), Federal law does not supersede State law on the regulation of service corporations.

Defendant next argues that the Act is preempted by Federal law, because section 6 of the Act is in direct conflict with a section of the Code of Federal Regulations which addresses the subject of real estate loans (12 C.F.R. §545.32 (1987)). Defendant maintains that the State law requires the lender to give the borrower the option of pledging an interest-bearing account, whereas under the Federal regulation, the lender can require the borrower to establish an escrow account. Defendant contends that compliance with both laws is physically impossible and the State law deprives the lender of the option of requiring the borrower to establish an escrow-like arrangement. Plaintiffs maintain that no conflict exists because the Federal regulation relied upon by defendant refers only to associations. We agree with plaintiffs that no conflict exists between the Act and Federal law.

Section 6 of the Act gives borrowers the option of pledging an interest-bearing account with the mortgage lender to secure the payment of taxes. (Ill. Rev. Stat. 1985, ch. 17, par. 4906.) On the other hand, the Federal regulation pertaining to escrow accounts provides, in part:

> "*An association may require* that all or any part of the estimated annual taxes, assessments, insurance premiums, and other charges on any loan be paid in advance *to the association,* in addition to interest and principal payments on the loan, *to enable the association* to pay such charges as they become due \*\*\*." (Emphasis added.) (12 C.F.R. §545.32(b)(6) (1987).)

The plain language of the regulation refers only to associations. Defendant is a service corporation. Therefore, no actual conflict exists between the Act and Federal law.

For the reasons stated, the judgment of the appellate court, reversing the circuit court, is affirmed.

*Judgment affirmed.*