(No. 83822.—

PHYLLIS J. WEATHERMAN *et al.*, Indiv. and on Behalf of all Others Similarly Situated, Appellees, v. GARY-WHEATON BANK OF FOX VALLEY, N.A., n/k/a The First National Bank of Chicago, N.A., Appellant.

*Opinion filed June 17, 1999.*

474

RATHJE, J., took no part.
HARRISON, J., concurring in part and dissenting in part.

Lynn A. Goldstein and John C. Simons, of Chicago, for appellant.

Clinton A. Krislov and Jonathan Nachsin, of Krislov & Associates, Ltd., of Chicago, for appellees.

Bruce J. Baker, Paul E. Dengel and John C. Martin, of Schiff, Hardin & Waite, of Chicago, for *amicus curiae* Illinois Bankers Association.

James E. Trausch, of Jaros, Tittle & O'Toole, Ltd., of Chicago, for *amicus curiae* Illinois Mortgage Bankers Association.

JUSTICE BILANDIC delivered the opinion of the court:

The issues presented in this appeal center on whether a lender violated the Illinois Consumer Fraud and Deceptive Business Practices Act (hereinafter Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1992)) by charging loan applicants a mortgage assignment recording fee and a tax escrow suspension fee.

## BACKGROUND

In October of 1992, plaintiffs, Phyllis J. Weatherman, Ruth A. Russell, and Ronald D. Vega, applied to defen-

dant, Gary-Wheaton Bank of Fox Valley, for a mortgage to refinance residential property.[1] At the time that plaintiffs applied for the loan, defendant provided them with a document entitled "Good Faith Estimate of Charges." That document disclosed certain estimated charges relating to closing, including the sum of $80 for recording fees and a real estate tax escrow in the amount of $2,664. Defendant also informed plaintiffs when they applied for their loan that it sells all of its loans into the secondary mortgage market and that their loan would be sold and transferred at or after closing. Plaintiffs accepted these terms. Defendant approved a $137,250 loan and issued its loan commitment. Plaintiffs signed the loan commitment and gave defendant approximately $1,400 as a "lock-in fee," which was refundable upon closing of the loan.

Before closing, defendant chose to assign plaintiffs' mortgage to Midwest Mortgage Services, Inc. (Midwest), a wholesale mortgage banking company that buys and then sells mortgage loans into the secondary mortgage market. Defendant and Midwest have had a contract with each other since 1987 regarding the sale and purchase of mortgage loans. Also prior to closing, plaintiffs requested that defendant suspend the tax escrow. Defendant agreed and informed plaintiffs they would be charged a $343.13 fee to "control their own escrow."

At closing, defendant provided plaintiffs with a "Settlement Statement" containing an itemized breakdown of all closing costs. That statement indicated that plaintiffs would be charged $77 in recording fees, which included a $15 fee to record the assignment of the mortgage to Midwest. Defendant paid that fee to the title company, which was paying for the recording. The

---

[1]After plaintiffs applied for their loan, the First National Bank of Chicago, which is a subsidiary of First Chicago Corporation, acquired Gary-Wheaton Bank of Fox Valley.

"Settlement Statement" further indicated that plaintiffs would be charged a $343.13 escrow suspension fee. Plaintiffs paid these fees at closing, but claim that they did so only to complete the refinancing, control their own escrow by paying their property taxes themselves, and avoid losing their lock-in fee.

Plaintiffs thereafter filed a class action complaint in the circuit court of Cook County against defendant, the First National Bank of Chicago, and First Chicago Corporation. Acting on behalf of a putative class comprised of all mortgage borrowers to whom defendant charged either a mortgage assignment recording fee or an escrow suspension fee within the applicable limitations period, plaintiffs allege that defendant failed to inform them of the mortgage assignment recording fee until closing and failed to inform them of the escrow suspension fee until just a few days before closing. Plaintiffs claim that they received no benefit as a result of either the mortgage assignment recording fee or the escrow suspension fee and that, had they known before paying their lock-in fee that defendant would charge them these two fees, they "would have pursued refinancing with other lenders who did not require payment of these fees." In addition, plaintiffs claim that defendant misrepresented that the fees were required and necessary charges to close and fund the loan. Plaintiffs further allege that they relied on defendant's omissions and misrepresentations. Based on these allegations, plaintiffs claim that defendant violated the Consumer Fraud Act by engaging in unfair, unauthorized and deceptive lending practices.

Defendant moved to dismiss plaintiffs' complaint, asserting that First Chicago Corporation, as the parent company of the First National Bank of Chicago, is a separate entity and therefore should be dismissed. The motion also asserted that the complaint failed to state a

claim upon which relief may be granted.[2] The circuit court initially dismissed First Chicago Corporation from the case. The court then denied that portion of the motion requesting dismissal of the mortgage assignment recording fee claim. The court, however, dismissed that portion of plaintiffs' complaint charging that the imposition of the escrow suspension fee violated the Consumer Fraud Act. The court ruled that plaintiffs had been notified in advance of the escrow suspension fee and agreed to that fee.

Defendant next filed a motion to dismiss the mortgage assignment recording fee claim under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)), which the court denied. The court also refused plaintiffs' request to decide the issue of class certification at that time. On defendant's request, however, the circuit court certified the following question of law for interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308):

"A. Whether a lender violates the Illinois Consumer Fraud and Deceptive [Business] Practices Act by giving an applicant for a loan, at the time a loan is applied for, a gross estimate of the recording fees to be paid at closing and not telling the loan applicant until closing that one of the fees included in the gross estimate was a fee to cover the cost of recording the assignment of the mortgage securing the loan.

B. In this case, the assignee of the assignment is a wholly-owned affiliate of the defendant."

The circuit court also found that, pursuant to Supreme

---

[2]Although the motion failed to specify under which section of the Code of Civil Procedure dismissal was sought, the substance of the motion challenged whether plaintiffs' complaint regarding the mortgage assignment recording fee and the escrow suspension fee stated a cause of action. We, therefore, agree with the appellate court that it should be reviewed as a section 2—615 motion (735 ILCS 5/2—615 (West 1992)). 286 Ill. App. 3d 48, 62-63.

Court Rule 304(a) (155 Ill. 2d R. 304(a)), there was no just reason to delay the appeal of its decision dismissing the escrow suspension fee claim, and stayed further proceedings pending appellate review.

The appellate court accepted defendant's petition for leave to appeal on the Rule 308 certified question, and consolidated that appeal with plaintiffs' Rule 304(a) appeal from the circuit court's dismissal of the escrow suspension fee claim. The appellate court majority answered the certified question affirmatively on the basis that such conduct amounted to a deceptive and unfair practice. 286 Ill. App. 3d at 59-62. The appellate court rejected defendant's argument that conduct by a lender as set forth in the certified question complies with a federal statute such that it constitutes a defense to liability under the Consumer Fraud Act. 286 Ill. App. 3d at 55-58. The appellate court also held that plaintiffs failed to state a cause of action under the Consumer Fraud Act based on the escrow suspension fee. 286 Ill. App. 3d at 63-65. The dissent agreed with the majority's dismissal of the escrow suspension fee claim, but argued that disclosing the mortgage assignment recording fee under the circumstances in the certified question did not violate the Consumer Fraud Act. 286 Ill. App. 3d at 66-70 (DiVito, J., concurring in part & dissenting in part).

Both parties filed petitions for leave to appeal to this court. We denied defendant's petition for leave to appeal and entered a supervisory order remanding the cause to the appellate court for reconsideration of its denial of defendant's petition for rehearing regarding the mortgage assignment recording fee. Plaintiffs' petition for leave to appeal, asserting that the circuit and appellate courts erred in dismissing the escrow suspension fee claim, was denied by this court without prejudice, so as to allow plaintiffs the opportunity to refile. On remand, the appellate court denied defendant's petition for rehearing,

and defendant filed a new petition for leave to appeal to this court on the mortgage assignment recording fee issue. This court allowed defendant's petition for leave to appeal (166 Ill. 2d R. 315). We also allowed the Illinois Bankers Association and the Illinois Mortgage Bankers Association to submit briefs as *amicus curiae* in support of defendant. 155 Ill. 2d R. 345.

## ANALYSIS

### I. Mortgage Assignment Recording Fee

We first review the question of law certified by the circuit court pursuant to Rule 308. As noted, the circuit court certified the question of law concerning the mortgage assignment recording fee following its denial of defendant's section 2—619 motion to dismiss plaintiffs' mortgage assignment recording fee claim. The standard of review on appeal is therefore *de novo*. See *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997).

The Consumer Fraud Act is "a regulatory and remedial statute intended to protect consumers, borrowers and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Cripe v. Leiter*, 184 Ill. 2d 185, 190-91 (1998). The Consumer Fraud Act contains an exemption from liability for conduct authorized by federal statutes and regulations. Section 10b(1) provides that the Consumer Fraud Act does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1) (West 1992). Defendant argues that a lender that charges a mortgage assignment recording fee under the circumstances in the certified question is exempt from liability under section 10b(1) of the Consumer Fraud Act because the fee is disclosed in compliance with a federal statute.

The federal statute relied on by defendant is the Real

Estate Settlement Procedures Act (RESPA) (12 U.S.C. § 2601 *et seq.* (1994)). RESPA sets forth various requirements regarding the residential real estate settlement process. One of Congress' stated purposes for enacting RESPA was to provide more effective advance disclosure to home buyers and sellers of settlement costs, *i.e.*, the costs associated with residential real estate closings. 12 U.S.C. § 2601(b)(1) (1994). RESPA effectuates this purpose by requiring disclosure of settlement costs both before and at closing. More specifically, RESPA requires that, when a mortgage lender prepares a written loan application, it must also distribute to the borrower a booklet, prepared by the Secretary of Housing and Urban Development (HUD), designed to help the borrower better understand the nature and costs of real estate settlement services. 12 U.S.C. §§ 2604(a), (d) (1994). RESPA also requires that, at the time of application, the lender must provide the borrower with a good-faith estimate of settlement charges. 12 U.S.C. § 2604(c) (1994). Further, RESPA states that, at closing, the borrower must be provided with a uniform settlement statement. A uniform settlement statement is a standard form developed by HUD that itemizes all of a borrower's charges for settlement. 12 U.S.C. § 2603(a), (b) (1994).

In this case, the documents attached to plaintiffs' complaint establish that, when plaintiffs applied for their mortgage loan, defendant provided them with a good-faith estimate of their settlement charges. That good-faith estimate included a line marked "recording fees," which were listed at $80. Subsequently, at closing, plaintiffs were provided with a settlement statement that itemized all of their settlement charges, including a breakdown of their individual recording fees. That statement indicated that actual recording fees would be $77, which included a $15 mortgage assignment recording fee. Plaintiffs' complaint alleges that, in charging the $15

mortgage assignment recording fee, defendant committed a deceptive and unfair practice under the Consumer Fraud Act. Plaintiffs contend that defendant did not comply with RESPA's requirements regarding the good-faith estimate and that defendant is therefore not exempt from liability under section 10b(1) of the Consumer Fraud Act.

Plaintiffs assert that defendant did not comply with RESPA because it failed to specifically identify the mortgage assignment recording fee in the good-faith estimate, such that there was no agreement by plaintiffs to pay the fee. We disagree. Section 2604(c) of RESPA mandates that a lender provide a borrower with a good-faith estimate of the "amount or range" of charges associated with settlement. 12 U.S.C. § 2604(c) (1994). The plain language of section 2604(c) thus reveals that a lender need only provide a borrower with an estimated "amount or range" of the settlement charges. This section does not require a lender to itemize all charges in providing a borrower with a good-faith estimate. This interpretation is evident when the language in section 2604(c), regarding the good-faith estimate presented before closing, is compared with the language used in section 2603(a), regarding the settlement statement presented at closing. Section 2603(a) provides that the statement of settlement costs must "conspicuously and clearly itemize all charges imposed upon the borrower *** in connection with the settlement." 12 U.S.C. § 2603(a) (1994). The distinct language used in sections 2604(c) and 2603(a) indicates that Congress intended the settlement statement provided to a borrower at closing to include a complete itemization of all charges associated with a real estate settlement. Compare 12 U.S.C. § 2604(c) (1994) with 12 U.S.C. § 2603(a) (1994). The good-faith estimate, on the other hand, merely gives a borrower an estimate of the anticipated settlement charges. Therefore,

RESPA does not require a lender to provide an itemization of all costs associated with settlement in its good faith estimate.

Regulation X (24 C.F.R. § 3500.1 *et seq.* (1998)), the regulation prescribed by HUD to interpret and implement RESPA, provides further support for the conclusion that a lender is not required to itemize all charges relating to settlement in the good-faith estimate. RESPA authorizes HUD to prescribe regulations to achieve its purpose. 12 U.S.C. § 2617(a) (1994). We accord considerable deference to a federal agency's interpretation of a federal statute, provided that its interpretation is reasonable and Congress has not expressed a contrary intent. *Spitz v. Goldome Realty Credit Corp.*, 151 Ill. 2d 71, 76 (1992). Congress included compliance with the regulations prescribed by HUD as a condition for absolving lenders from liability under RESPA for "any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Secretary." 12 U.S.C. § 2617(b) (1994). Congress thus clearly expressed its determination to treat HUD's regulations as authoritative.

Regulation X explains in detail the requirements of a good-faith estimate. It defines a good-faith estimate as an estimate of charges that a borrower is likely to incur in connection with a settlement. 24 C.F.R. § 3500.2 (1998). Regulation X does not require all recording fees to be itemized in the good-faith estimate. Section 3500.7(d) of Regulation X provides a suggested good-faith estimate form and a suggested HUD-1 settlement statement. 24 C.F.R. pt. 3500, app. A, app. C (1998). The sample form lists specific categories of fees, each with a line where the lender inserts the fee amount. 24 C.F.R. pt. 3500, app. C (1998). Each category of fee corresponds to the line number of that fee on the HUD-1 settlement statement.

Instead of requiring the lender to itemize each fee,

the good-faith estimate form allows settlement fees to be disclosed as gross estimates. The good-faith estimate form lists a category for recording fees, which corresponds to line 1201 of the HUD-1 settlement statement. 24 C.F.R. pt. 3500, app. C (1998). The form contains only one line for a lender to estimate all "recording fees" referred to on line 1201 of the HUD-1 settlement statement. 24 C.F.R. pt. 3500, app. C (1998). In contrast, line 1201 of the sample HUD-1 settlement statement provides for the itemization of recording fees as indicated by its breakdown of fees for the recording of a deed, a mortgage, and a release. 24 C.F.R. pt. 3500, app. A (1998). Lines 1204 and 1205 of the HUD-1 settlement statement provide additional lines and spaces where other recording fees may be added. 24 C.F.R. pt. 3500, app. A (1998). Thus, unlike the good-faith estimate form, the HUD-1 settlement statement provides several lines and spaces for a lender to identify the amounts of specific recording fees. Moreover, the instructions to the HUD-1 settlement statement provide that recording fees should be itemized. 24 C.F.R. pt. 3500, app. A (1998).

In light of the limited format set forth in the good-faith estimate form and the detailed format set forth in the HUD-1 settlement statement for identifying recording fees, we determine that a lender is not required to itemize all recording fees in the good-faith estimate. Rather, the lender is permitted to aggregate all recording fees on the single line provided for recording fees in the good-faith estimate form. We therefore conclude that RESPA authorizes a lender to reflect all recording fees as a gross estimate in the good-faith estimate. A gross estimate of recording fees satisfies the purpose of RESPA because it provides effective advance disclosure to a borrower and gives a borrower an opportunity to compare the recording fees of one lender with those of another lender.

In this case, defendant, as a lender acting under the circumstances stated in the certified question, complied with the good-faith estimate disclosure requirements of RESPA. RESPA authorized defendant to disclose the mortgage assignment recording fee as part of its gross estimate of all recording fees on the good-faith estimate. Defendant did just that. In the good-faith estimate form given to plaintiffs, defendant set forth $80 on the single line for the estimated amount or range for all recording fees. That $80 estimate included within it the $15 mortgage assignment recording fee at issue. Contrary to plaintiffs' argument, defendant was not required to itemize the recording fees in the good-faith estimate, as defendant later did in the HUD-1 settlement statement given to plaintiffs at closing. We also reject the appellate court's suggestion that RESPA required a separate listing of the mortgage assignment recording fee because the sample form includes an additional category entitled "Other fees." See 24 C.F.R. pt. 3500, app. C (1998). We interpret "other fees" as fees other than those specifically categorized on the good-faith estimate form. Because there is a category for recording fees, "other fees" does not refer to specific recording fees. Defendant reasonably included the $15 mortgage assignment recording fee within the gross estimate of recording fees and not within the category for "other fees." Therefore, because defendant informed plaintiffs of a gross estimate of recording fees, which included the mortgage assignment recording fee, and that plaintiffs' loan would be sold, we find that plaintiffs agreed to the mortgage assignment recording fee.

Plaintiffs nevertheless contend that the $15 fee defendant charged for recording the assignment of plaintiffs' mortgage to Midwest was not an authorized charge under RESPA. According to plaintiffs, this assignment was a separate transaction, unrelated to plaintiffs' loan from defendant. We reject plaintiffs' argument.

The plain meaning of the language used by the legislature is the best indication of legislative intent, to which this court will give effect in construing a statute. *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996); *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 806-07 (7th Cir. 1988). As noted, section 2604(c) of RESPA requires a lender, before closing, to provide a borrower with "a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement." 12 U.S.C. § 2604(c) (1994). Section 2602(3) of RESPA defines the term "settlement services" to include "any service provided in connection with a real estate settlement." 12 U.S.C. § 2602(3) (1994). By defining "settlement services" as *any service* associated with settlement, the plain meaning of sections 2604(c) and 2602(3) is that the good-faith estimate must include the borrower's charges for *any service* associated with settlement. The fee for recording the assignment of plaintiffs' mortgage is related to plaintiffs' loan. The mortgage assignment recording fee represents a charge to plaintiffs for a service associated with their settlement. Thus, it was properly included in the good-faith estimate given to plaintiffs.

Before concluding, we note that our findings are not affected by the fact that defendant and Midwest are affiliates. Although defendant intended, in advance of closing, to assign plaintiffs' mortgage to Midwest, there is no support that it intended to assign the mortgage to an affiliate that was created for that purpose. Midwest and defendant entered into their contract in 1987 when both were independent entities.

Having determined that defendant's actions, as set forth in the certified question, complied with the disclosure requirements of RESPA, we examine whether such compliance constitutes a defense to liability under the Consumer Fraud Act. As earlier noted, section 10b(1) of

the Consumer Fraud Act provides that the Act does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1) (West 1992). Defendant contends that, because it acted in accordance with RESPA, it is exempt from liability under section 10b(1) of the Consumer Fraud Act. Plaintiffs counter that defendant's compliance with RESPA did not exempt defendant from liability under the Consumer Fraud Act. Plaintiffs rely on this court's decision in *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33 (1994), to support their argument.

Plaintiffs' reliance on *Martin* is misplaced. In *Martin*, the plaintiffs alleged that the defendant violated the Consumer Fraud Act because the defendant misrepresented the nature of a "foreign service fee" on the disclosure statement given to the plaintiffs in conjunction with the sale of commodity option contracts. The defendant responded that the Consumer Fraud Act did not apply because, by complying with the Commodity Futures Trading Commission's disclosure regulations, section 10b(1) of the Consumer Fraud Act provided a defense to liability. This court rejected the application of section 10b(1) because it determined that the defendant's mischaracterization of the terms in the disclosure statement was not specifically authorized by the Commission and was not in compliance with the Commission's regulations. *Martin*, 163 Ill. 2d at 50. The court reasoned that the disclosure statement failed to disclose that the foreign service fee was in fact an additional commission from which the defendant would derive compensation. *Martin*, 163 Ill. 2d at 51. By using the misleading and deceptive term "foreign service fee," the defendant deceived the plaintiffs into believing that fee was an additional separate charge the defendants paid to third parties. *Martin*,

163 Ill. 2d at 51. Here, unlike in *Martin*, defendant did not misrepresent the terms in the good-faith estimate. The defendant included the mortgage assignment recording fee along with other recording fees, which were all paid to a third party. *Martin*, therefore, does not support plaintiffs' position that defendant cannot rely on the defense provided in section 10b(1) of the Consumer Fraud Act.

We conclude that defendant's compliance with RESPA in this case renders defendant exempt from liability under the Consumer Fraud Act. Actions specifically authorized by RESPA satisfy section 10b(1) of the Consumer Fraud Act because they are "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States" (815 ILCS 505/10b(1) (West 1992)). We note that this same conclusion has been reached with regard to compliance with the Truth in Lending Act (TILA) (15 U.S.C. § 1601 *et seq.* (1994)). The purpose of TILA is to promote the informed use of credit by providing consumers with meaningful disclosure of credit terms. 15 U.S.C. § 1601(a) (1994). For example, TILA requires that creditors must clearly and accurately reveal to consumers the cost of credit, including all finance charges. 15 U.S.C. §§ 1605, 1632, 1637, 1637a, 1638 (1994). TILA's purpose is thus similar to RESPA's purpose of providing a borrower with more effective advance disclosure of settlement costs. In cases where the defendant complied with TILA, courts have applied section 10b(1) of the Consumer Fraud Act to find that there was no violation of the Act. See *Lanier v. Associates Finance, Inc.*, 114 Ill. 2d 1, 14, 17-18 (1986) (holding that the lender's limited disclosure in the loan agreement that, in the event of prepayment of the loan, the borrower could receive a refund of any unearned finance charge which the lender would compute accord-

ing to the "Rule of 78's" method, did not violate the Consumer Fraud Act because it was in compliance with TILA's disclosure requirements); *Shields v. Lefta, Inc.*, 888 F. Supp. 894, 898 (N.D. Ill. 1995) (holding that the creditor's placement of service contract price among non-negotiable costs on the disclosure form provided to car purchasers comported with TILA disclosure require-ments and therefore was a defense to liability under the Consumer Fraud Act); *Aurora Firefighter's Credit Union v. Harvey*, 163 Ill. App. 3d 915, 921-23 (1987) (holding that the Consumer Fraud Act did not apply pursuant to section 10b(1)'s exemption because the credit union's failure to make disclosures to the defendant, who was only a secondary and not primary obligor on the loan, complied with TILA's disclosure requirements). Analo-gous cases under TILA thus support a conclusion that defendant's compliance with RESPA is a defense to li-ability under section 10b(1) of the Consumer Fraud Act.

In light of the foregoing, we hold that defendant, as a lender that disclosed the mortgage assignment recording fee under the circumstances stated in the certified ques-tion, complied with RESPA. By complying with RESPA, a lender is exempt from liability under section 10b(1) of the Consumer Fraud Act. Defendant's acts, as set forth in the certified question, therefore did not violate the Consumer Fraud Act. Accordingly, we answer the certi-fied question in the negative.

II. Plaintiffs' Cross-Relief: Escrow Suspension Fee

We next address plaintiffs' request for cross-relief. Plaintiffs argue that defendant violated the Consumer Fraud Act by charging them a fee to suspend the tax escrow, which fee was not disclosed until a few days before closing. Defendant first responds that this court lacks jurisdiction to consider plaintiffs' arguments regarding the escrow suspension fee claim. Defendant bases this jurisdictional argument on the fact that

plaintiffs did not appeal from the appellate court's judgment affirming the circuit court's dismissal of the escrow suspension fee claim. As earlier noted, both parties initially filed petitions for leave to appeal to this court. Plaintiffs filed a petition for leave to appeal from the appellate court's judgment regarding the escrow suspension fee claim. Defendant's petition for leave to appeal concerned the appellate court's judgment regarding the mortgage assignment recording fee. This court denied defendant's petition for leave to appeal and entered a supervisory order remanding the cause to the appellate court for reconsideration of its denial of defendant's petition for rehearing. This court also denied plaintiffs' petition for leave to appeal without prejudice. On remand, the appellate court again denied defendant's petition for rehearing, and defendant filed a new petition for leave to appeal from the decision of the appellate court as to the mortgage assignment recording fee. Plaintiffs, however, did not file another petition for leave to appeal from the appellate court's decision as to the escrow suspension fee. It is solely this failure to file a second petition for leave to appeal that is at issue. Plaintiffs respond that, under Supreme Court Rule 318(a) (155 Ill. 2d R. 318(a)), this court may properly review plaintiffs' escrow suspension fee claim. We agree with plaintiffs.

Rule 318, which provides the general rules governing civil appeals from the appellate court to this court, states in subsection (a) that in all appeals "any appellee, respondent, or coparty may seek and obtain any relief warranted by the record on appeal without having filed a separate petition for leave to appeal or notice of cross-appeal or separate appeal." 155 Ill. 2d R. 318(a). This court has invoked Rule 318(a) in finding that allowance of one party's petition for leave to appeal brings before this court the other party's requests for cross-relief. See *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 41 (1998);

*People v. Bole*, 155 Ill. 2d 188, 192 (1993). We therefore reject defendant's contention that we lack jurisdiction to review the appellate court's decision on the escrow suspension fee because plaintiffs did not file a petition for leave to appeal. Under Rule 318(a), our allowance of defendant's petition for leave to appeal brings plaintiffs' request for cross-relief before this court. In light of our decision on this issue, we deny plaintiffs' motion to strike the jurisdiction argument contained in defendant's reply brief, which was taken with the case. We now consider the merits of plaintiffs' request for cross-relief.

Plaintiffs argue that the circuit and appellate courts erred in finding that they failed to state a cause of action under the Consumer Fraud Act with regard to defendant's charging a fee to suspend plaintiffs' escrow. As noted, the circuit court granted defendant's motion to dismiss the escrow suspension fee claim pursuant to section 2—615. Such a motion attacks the legal sufficiency of the complaint by alleging defects on the face of the complaint. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86 (1996). The standard of review on appeal from an order granting a section 2—615 motion to dismiss is *de novo*. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 127 (1995). We must determine whether the allegations of plaintiffs' complaint, when construed in the light most favorable to plaintiffs, are sufficient to establish a cause of action upon which relief may be granted. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 490 (1996). In making this determination, all well-pleaded facts in the complaint and all reasonable inferences therefrom are accepted as true. *Bryson*, 174 Ill. 2d at 86. Only those facts apparent from the face of the pleadings, including exhibits attached to the pleadings (735 ILCS 5/2—606 (West 1992)), and matters of which the court can take judicial notice, and judicial admissions in the record, may

be considered. *Mt. Zion State Bank*, 169 Ill. 2d at 115; 3 R. Michael, Illinois Practice § 27.4 (1989).

To state a cause of action under the Consumer Fraud Act, a plaintiff must allege: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce. *Connick*, 174 Ill. 2d at 501. The Consumer Fraud Act defines "unfair or deceptive acts or practices" to include the use or employment of any "deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." 815 ILCS 505/2 (West 1992).

Plaintiffs' complaint alleges that defendant violated the Consumer Fraud Act by charging plaintiffs an escrow suspension fee because: (1) defendant failed to inform plaintiffs until three or four days before the closing that it would charge plaintiffs a fee to manage their own escrow; and (2) the fee was unfair and unauthorized in that defendant misrepresented that the fee was a required charge and necessary to close and fund the loan, when, in fact, the Mortgage Escrow Account Act (Escrow Act) (765 ILCS 910/1 *et seq.* (West 1992)) does not permit a lender to charge a fee to suspend its escrow requirement. For the reasons that follow, we hold that plaintiffs' allegations are insufficient to state a cause of action under the Consumer Fraud Act.

We first address plaintiffs' allegation that defendant failed to inform plaintiffs about the escrow suspension fee until a few days before closing. The good-faith estimate form plaintiffs received from defendant at the time they applied for their loan is attached to plaintiffs' complaint. This form indicates that defendant informed plaintiffs of the amount of the tax escrow. Plaintiffs

signed and returned the good-faith estimate form to defendant. In response to defendant's request to admit pursuant to Supreme Court Rule 216 (134 Ill. 2d R. 216), plaintiffs admitted that they asked defendant to suspend its escrow requirement after the loan had been approved and plaintiffs had paid the lock-in fee. This court has determined that admissions made pursuant to a request under our Rule 216 are tantamount to judicial admissions. *Mt. Zion State Bank*, 169 Ill. 2d at 125. As noted above, judicial admissions in the record can be considered in ruling on a section 2—615 motion to dismiss. The complaint next provides that defendant advised the plaintiffs that it would "temporarily suspend the escrow," and that defendant prepared and completed an initial escrow account statement and a loan disbursement statement, both of which reflect the escrow suspension. The complaint goes on to state that "[a]t a *later* date and after the loan had been approved, approximately three or four days before the January 12, 1993 closing," defendant demanded that plaintiffs pay a $343.13 fee to " 'control their own escrow,' *i.e.*, not have an escrow at all." (Emphasis added.) The loan disbursement statement, which was attached to plaintiffs' complaint and which plaintiffs' complaint indicates was received at some time *prior to* three or four days before closing, however, clearly states, "Temporary Suspension of Escrow fee at .25% of Loan Amount . . . $343.13." Thus, the loan disbursement statement reveals that defendant advised plaintiffs earlier than three or four days before closing that it would temporarily suspend the escrow for a fee. Accordingly, the allegations in plaintiffs' complaint do not demonstrate a deceptive practice by defendant with respect to the timing of the disclosure of the escrow suspension fee.

Plaintiffs also allege that imposing the escrow suspension fee violated the Consumer Fraud Act because

defendant falsely told them the fee was required and necessary to close and fund the loan when, in fact, such a fee was not authorized under the Escrow Act. Plaintiffs' complaint states: "If the bank believes itself insecure for the buyer's payment of taxes and insurance, it may require an escrow or secured account pledge. The law does not permit [defendant] to make a charge for 'deferring' this choice." We disagree.

The Escrow Act addresses the options available to a lender and a borrower to secure the payment of real estate taxes on mortgaged property. Section 6 of the Escrow Act provides: "In lieu of the mortgage lender establishing an escrow account or an escrow-like arrangement, a borrower may pledge an interest-bearing time deposit with the mortgage lender in an amount sufficient to secure the payment of anticipated taxes." 765 ILCS 910/6 (West 1992). This provision clearly governs a borrower's option to pledge an interest-bearing time deposit instead of an escrow account to cover the payment of future anticipated property taxes. Nevertheless, the Escrow Act does not address the situation presented here, wherein a lender waives the escrow requirement at the request of the borrower, who does not in turn request to pledge an interest-bearing time deposit as security for the future payment of property taxes. Moreover, there is nothing in the Escrow Act which would preclude a lender from charging a fee for assuming an additional risk, namely, that a borrower would not pay his or her property taxes. Consequently, plaintiffs' allegation that the Escrow Act prohibits a lender from charging a fee for waiving its right to require an escrow, when a borrower does not exercise his or her option to pledge an interest-bearing time deposit, is without merit.

Our holding in *Stern v. Norwest Mortgage, Inc.*, 179 Ill. 2d 160 (1997), does not require us to find that the escrow suspension fee violated the Escrow Act. In *Stern*,

the mortgage lender imposed an escrow waiver fee on the borrowers because the borrowers had chosen to exercise their option under section 6 of the Escrow Act to pledge an interest-bearing time deposit with the lender to pay their real estate taxes in lieu of an escrow account. The borrowers sued the lender, alleging, *inter alia*, that the fee violated the Escrow Act. This court agreed. We held that the Escrow Act does not allow a lender to charge borrowers for exercising their rights under section 6, and that the lender, by doing so, "would be able to effectively take away a right given the borrower by the legislature." *Stern*, 179 Ill. 2d at 165. The court in *Stern* reasoned that the legislature would not have provided a benefit to borrowers while at the same time giving lenders a means to reduce or eliminate such a benefit. *Stern*, 179 Ill. 2d at 165. That situation is not before us in the case at bar.

The fee in *Stern* related to an option covered by the Escrow Act. The escrow suspension fee at issue here, on the other hand, involves an option not addressed by the Escrow Act, *i.e.*, the ability of borrowers to pay their taxes without setting up any sort of tax account with the lender. Consequently, unlike the lender in *Stern*, the lender here is not reducing or eliminating a benefit bestowed by the legislature on the borrower. Rather, this case involves a fee voluntarily agreed to by the borrower to obtain a tax payment option not granted by the Escrow Act after plaintiffs voluntarily rejected their options under section 6 of the Escrow Act. This court has recognized the rights of competent parties to enter into contracts. See *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 215 (1997). Plaintiffs were not forced to pay the fee because they could have avoided paying the fee by adhering to the original agreement, providing for the establishment of an escrow account. Instead, they chose to deviate from the original agreement, avoid either of

the two options set forth in the Escrow Act, and pay the fee. We, therefore, find no reason why the parties herein could not enter into this agreement. This agreement allowed plaintiffs to handle their own real estate taxes in exchange for a fee paid to defendant; defendant in turn gave up its right to demand the protection of an escrow account or interest-bearing time deposit as security for the payment of the taxes.

Accordingly, we hold that the allegations in plaintiffs' complaint regarding defendant's charging an escrow suspension fee are insufficient to state a cause of action against defendant for violating the Consumer Fraud Act. The circuit court thus properly dismissed this claim.

## CONCLUSION

For the foregoing reasons, we reverse the appellate court's holding that answered the certified question in the affirmative, but we affirm the appellate court's holding that affirmed the circuit court's dismissal of plaintiffs' escrow suspension fee claim. We remand this cause to the circuit court for further proceedings consistent with this opinion.

*Appellate court judgment affirmed in part and reversed in part; cause remanded.*

JUSTICE RATHJE took no part in the consideration or decision of this case.

JUSTICE HARRISON, concurring in part and dissenting in part:

I concur with the majority's holding that plaintiffs' complaint was insufficient to state a cause of action for a violation of the Consumer Fraud Act based upon defendant's charging an escrow suspension fee. Contrary to the majority, however, I believe that defendant's actions with regard to the mortgage assignment recording fee

violated the Consumer Fraud Act. Therefore, I would answer the certified question in the affirmative and affirm the appellate court's judgment in full.

The Consumer Fraud Act should be liberally construed. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 503 (1996). Additionally, this court has stated that when ruling on a motion to dismiss because the claims are barred by other affirmative matter that avoids the legal effect or defeats the claim (735 ILCS 5/2—619(a)(9) (West 1994)), the trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997). Considering these tenets, I would find that plaintiffs adequately alleged a violation of the Consumer Fraud Act so as to withstand defendant's section 2—619 motion to dismiss the mortgage assignment recording fee claim. Plaintiffs' complaint alleged that defendant had engaged in unfair and deceptive acts, in violation of section 2 of the Consumer Fraud Act, in that the mortgage assignment fee was a "charge for recording [defendant's] assignment to a third party[,] *** a transaction which is not part of its making a loan to the borrower." Although plaintiffs were informed more than two months before closing that their loan would be sold and transferred at or after closing, they were not informed that the cost of recording that transfer would be charged to them.

Whether conduct is unfair under the Consumer Fraud Act is determined on a case-by-case basis. See *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 313 (1996). As the majority notes, the Consumer Fraud Act defines "unfair or deceptive acts or practices" to include the use or employment of, *inter alia*, any "misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or

omission of such material fact." 815 ILCS 505/2 (West 1992). I agree with plaintiffs, and with the appellate court majority, that not only was defendant guilty of deception but also that, without plaintiffs' prior knowledge and consent, "assessing them a fee that was not theirs to pay was unfair under the Consumer Fraud Act." 286 Ill. App. 3d at 60.

Plaintiffs' complaint asserted that the omission to tell them of the fee until the closing and the misrepresentation that the fee was a required charge which was necessary to close and fund the loan violated the Consumer Fraud Act. Plaintiffs further alleged that defendant intended them to rely on this omission and misrepresentation. An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud. *Connick*, 174 Ill. 2d at 504; 815 ILCS 505/2 (West 1992). "A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *Connick*, 174 Ill. 2d at 505.

Plaintiffs adequately pled a violation of the Consumer Fraud Act based on a material omission by defendant, where they alleged that had they known before paying the lock-in fee that the lender would charge them the mortgage assignment fee, they would have pursued refinancing with other lenders who did not require payment of this fee. See *Butitta v. First Mortgage Corp.*, 218 Ill. App. 3d 12, 19-20 (1991) (plaintiffs failed to state a cause of action for a violation of the Consumer Fraud Act where they failed to allege: (1) they would have acted differently had they been aware of the disputed charges prior to closing; (2) any misrepresentation by defendant; or (3) any facts indicating that the disputed fees were improper or illegal).

The majority concludes that charging a mortgage as-

signment recording fee under the circumstances in the certified question did not violate the Consumer Fraud Act because the fee was disclosed in compliance with the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. § 2601 *et seq.* (West 1994)). It is true that section 10b(1) of the Consumer Fraud Act exempts from coverage "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1) (West 1992). However, I believe that RESPA did not authorize the conduct involved herein.

RESPA requires lenders to provide borrowers with a good-faith estimate of the amount of settlement charges a borrower is likely to incur. 12 U.S.C. § 2604(a), (c) (1994). Appendix C of the RESPA regulations contains a suggested good-faith estimate form, which the regulations state is in compliance with RESPA. 24 C.F.R. § 3500.7d (1998). As more completely explained by the majority, this form contains one space for recording fees and has a space below to list "other" fees. 24 C.F.R. pt. 3500, app. C (1998). The regulations permit the lender to include additional information in the good-faith estimate as long as the form remains clear and concise and the additional information is not more prominent than the required material. 24 C.F.R. § 3500.7(d) (1998).

The majority holds that "RESPA authorized defendant to disclose the mortgage assignment recording fee as part of its gross estimate of all recording fees on the good-faith estimate." 186 Ill. 2d at 485. Accordingly, it was permissible for defendant to "aggregate all recording fees on the single line provided for recording fees in the good-faith estimate form." 186 Ill. 2d at 484. The fatal flaw in this reasoning is that it implicitly equates the fee for recording the assignment of the mortgage to Midwest with a recording fee associated with the loan transaction.

The fact that the assignment to Midwest is a separate transaction that is not part of the loan transaction involving plaintiffs seems to have eluded the majority. While the fee in question is a recording fee, it is incurred by the lender in its separate act of assigning the mortgage, which takes place after or upon completion of a loan made to borrowers such as plaintiffs. Thus, because the fee is not a charge for a cost involved in extending loans, but rather a charge for a cost involved in assigning those loans, RESPA does not authorize the "aggregat[ion]" of this separate settlement charge with the recording fees legitimately included on the good-faith estimate.

Indeed, while RESPA authorizes lenders to estimate the recording costs incurred in making loans, it does not, as section 10b(1) requires, "specifically authorize" a lender to assess a mortgage assignment recording fee, to fail to disclose it until the closing, or to falsely represent to the borrowers that the fee, for a distinct transaction between the lender and a third party, was a required charge necessary for the lender to close and fund the loan. Therefore, because RESPA does not authorize the conduct described in the certified question, I would find that defendant is unable to use RESPA to invoke the Consumer Fraud Act's section 10b(1) exemption from liability.

The majority attempts to distinguish *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33 (1994), the case relied upon by plaintiffs to support their claim that defendant cannot rely on the defense provided in section 10b(1). However, I see no qualitative difference in the conduct of the defendant in *Martin*, which this court found did not warrant section 10b(1) protection, and the conduct of defendant herein. In *Martin*, while the defendant literally complied with the disclosure regulations of the Commodity Futures Trading Commission in a summary disclosure statement to a plaintiff class of inves-

tors, this court held that the defendant's actions were not specifically authorized by the Commission and the disclosure statement violated the Consumer Fraud Act where it concealed and failed to disclose the defendant's additional commission through the use of a misleading term. *Martin*, 163 Ill. 2d at 49-52. Here, while defendant included the mortgage assignment recording fee in the good-faith estimate given to plaintiffs, defendant's actions were not specifically authorized by RESPA and violated the Consumer Fraud Act where defendant concealed and failed to disclose until the closing of the loan that this fee related to a cost for a separate transaction involving only defendant and a third party.

For the foregoing reasons, I would answer the certified question in the affirmative, holding that defendant's actions with regard to the mortgage assignment fee constituted a violation of the Consumer Fraud Act. In all other respects I concur.